Hon. LUKE P. POLAND,  
Hon. ASA O. ALDIS,     }   ASSISTANT JUDGES.  
Hon. JOHN PIERPOINT.

---

### NELSON A. SAXTON v. CHARLES BACON.

*Fences. Damages.*

Under the statute of 1853, "relating to the building and repairing of fences"—Acts of 1853, No. 29, p. 24—it is not a prerequisite to the right of recovery of damages occasioned by the neglect of one party to build or maintain his share of a legal division fence, that the other party should first build or repair the fence, after ten days notice to the party in default.

Saxton *v.* Bacon.

The liability of a party for a neglect to build or maintain his share of a divî-sion fence, is not restricted to injuries connected with the use of the other party's land, but extends to all damages which may fairly be said to be the legal and natural consequence of such neglect.

A. and B. were adjoining proprietors, and had divided their division fence, one part to be maintained by one, and the other by the other. In consequence of the neglect of B. to maintain his portion of the fence, A.'s horses escaped through that portion upon B.'s land, where they were gored by B.'s bull; *Held,* that the fact that A.'s portion of the fence was defective and insuffi-cient, did not constitute a bar to his recovery of damages for this injury to his horses, if in fact the horses escaped through B.'s portion of the fence.

*Held,* also, in an action on the case in favor of A. against B., for the recovery of such damages, that the court should leave it to the jury to find whether they were the natural consequence of B.'s neglect to maintain his portion of the fence, and such as under the circumstances he might reasonably expect would follow therefrom, and unless they should find them to be such, the plaintiff could not recover.

CASE to recover damages alleged to have been occasioned by the defendant's bull in goring and wounding one of the plaintiff's horses, and goring and killing another.

The declaration set forth in substance, that the parties owned and occupied adjoining farms in Waltham, and that each being bound to maintain an equal proportion of the division fence between them, they had agreed upon the specific portions which each should keep in repair; that on or about July 25th, 1856, the two horses of the plaintiff passed over the division fence from the plaintiff's pasture into that of the defendant's, and over that portion of the division fence which it was the duty of the defendant to maintain and keep in repair, and which was illegal, insufficient, and out of repair, and that having so passed over this fence into the premises of the defendant, the horses were gored by a certain bull then and there kept by the defendant, and one of them was badly wounded and damaged and the other was killed; that this bull was a vicious, unruly and dangerous animal, accustomed to hook and do like mischief, and that his mischievous and dangerous propensities and habits were known to the defendant.

It was admitted that, by agreement between the parties, the plaintiff was bound to maintain the eastern, and the defendant the western portion of the division fence between their two pas-

tures. It was also shown and admitted that the fence of the plaintiff, as well as the fence of the defendant, was defective, illegal, and insufficient at the time of the injury, and that the plaintiff's two horses on the night preceding the 25th of July, 1856, had passed over from the pasture of the plaintiff into the adjoining pasture of the defendant, where the latter kept his bull and other cattle, and that during that night one of the horses was wounded and damaged, and the other wounded and killed in the defendant's pasture. The plaintiff, on the trial of the case gave evidence tending to prove that the defendant's bull, previous to, and at the time the plaintiff's horses were injured, was accustomed to hook and gore horses, and that the defendant had good reason to know that such were his malicious propensities. The plaintiff's evidence tended to show that the horses passed over the part of the fence which the defendant was obliged to maintain, and that they were gored by the defendant's bull.

The defendant contended, and gave evidence tending to prove that the plaintiff's horses passed into the defendant's pasture, over that part of the division fence which it was the duty of the plaintiff to keep in repair; also that the bull was not vicious, cross, or accustomed to hook or injure other animals, and that he did not gore the horses in question.

The defendant requested the court to charge the jury that inasmuch as it appeared and was admitted that the plaintiff's part of the division fence was illegal, defective, and insufficient, he was not entitled to recover in this action, even though they should find, from the evidence, that the horses passed over the defendant's portion of the fence and were killed by the defendant's bull.

The defendant also requested the court to charge the jury that the plaintiff was not entitled to recover, unless they found, from the evidence, that the defendant's bull was vicious and dangerous, and accustomed to hook other animals, and that this vicious and dangerous propensity was known to the defendant.

The court declined, upon these points, to instruct the jury as requested; but charged them that to entitle the plaintiff to recover he must satisfy them from a fair balance of the testimony, that his horses escaped from his own premises upon the premises of the defendant, through or over that part of the division fence

which the defendant was bound to keep in repair, and that it was not a sufficient and legal fence, and that while so on the premises of the defendant, they were gored and wounded by the defendant's bull; and if they found both of these facts, their verdict should be for the plaintiff, otherwise for the defendant.

The court further told the jury that it was not necessary for the plaintiff to prove that the defendant's bull had before that time been accustomed to hook or to gore horses, and that this was known to the defendant, and that the previous propensities of the bull in this respect, to do mischief, were a matter of no importance, except as they might have a bearing in assisting them to determine whether the bull in question did the mischief laid to his charge ; and in this particular the evidence as to his evil propensities might be considered and weighed, and have such an influence upon their minds, as they thought it deserved and no more; and if they found from the whole evidence in the case that the bull was of a quiet and peaceable disposition, and not in any way prone to hook and gore horses, it would have a different and opposite bearing, and the defendant would be entitled to have it so weighed and considered in his favor by the jury in determining the question whether the injury to the plaintiff's horses was done by his bull.

The jury were also told that if the plaintiff's part of the fence was insufficient and not a legal fence, it was no excuse or defence for the defendant, provided the horses did not escape through that portion of the division fence ; but if it was not a legal fence, and the horses escaped through that part of it and upon the premises of the defendant, then in that event, the plaintiff could not recover, even though the jury should believe the plaintiff's horses were injured by the defendant's bull while on his premises.

To this charge of the court, and the refusal to charge as requested, the defendant excepted.

*Roberts & Chittenden* and *Geo. W. Grandy*, for the defendant.

*Geo. F. Edmunds* and *Fred. E. Woodbridge*, for the plaintiff.

REDFIELD, Ch. J. Before the revised statutes of 1840, the occupier of land was bound to fence against neat cattle, and could

not impound them, and by parity of reason could not maintain trespass for injuries committed by them, unless all the fences of his inclosure, where the damage was done and which he was bound to maintain, were legal. Horses and sheep were expressly excepted from this provision in regard to legal fences. By the revised statutes, the outward fences of inclosures adjoining the highway, and such as the owner of the cattle is bound to maintain, are excepted in terms.

Adjoining proprietors have for many years, probably from the earliest existence of the State, with certain specific exceptions, been required to maintain division fences at their joint expense. Provisions have existed for establishing the division of the fence between the proprietors, and to enable one party, upon notice to and neglect of the other party, to build his proportion of the fence and recover the expense of the party in default, under the statute. The statute of 1797 contains a provision subjecting the party in default, in regard to division fences, to the payment of "all such damages as shall accrue to his or her neighbor, or neighbors thereby, to be appraised and ascertained by the fence viewers, they to appraise and ascertain the real value thereof; to be recovered with costs, in any court," etc.

In the revision of the statutes of 1840 these provisions are substantially preserved, with verbal modifications. By the Comp. Statutes, chapter 94, it is provided that the party in fault shall pay all damages sustained by the other party, "to be appraised by the fence viewers."

The statute of 1853 provides that the party in default in regard to building or keeping in repair his portion of the fence, "shall be liable for all damages done to, or suffered by the opposite party in consequence of such neglect." There is no provision for the intervention of the fence viewers in any way, in regard to these damages, nor is there any provision in regard to the mode of recovery, except that the party aggrieved may give ten days notice to the party in default, and thereafter proceed to build or repair the fence, and recover the expense of the party in default, and "the full amount of damages arising from such neglect." It is claimed this is the only remedy for the recovery of such damages. But we are not prepared to adopt this view.

If it were the purpose of the statute to make the right to recover damages, suffered through the neglect of building such fence, dependent upon the other party having proceeded to build them under the provisions of the statute, we think it fair to conclude there would have been some more specific provision to that effect.    We think this incidental provision for recovering the damages, in connection with the expense of erecting or repairing the fence, does not make the right of recovery for such damages dependent upon the building or repairing of the fences.    We can not regard the statute as having prescribed the exclusive remedy for the recovery of such damages.    And the omission of such a provision, and the departure from the former statutes in regard to the intervention of the fence viewers, leads us to conclude that it was the purpose of the statute to leave the party to the ordinary remedy for injuries by common law action.    The definition given of the extent of the liability is very broad, as broad as the common law liability for injuries suffered through the negligence of others.    It seems to us that it is put very much upon the same ground.    It is for "all damages done to, or suffered by the opposite party in consequence of such neglect."  Thus leaving it very much where the common law puts the liability of a party bound to do an act, from the omission to do which an injury results to others.

We think too, that the liability can not fairly be restricted to injuries connected with the use of the plaintiff's land, but that it will extend to all damages which may fairly be said to be the legal and natural consequence of the defendant's omission.    And if the jury had in this case been required to find what is alleged in the declaration in regard to the vicious habits of the animal, there could be little question that the injury to the plaintiff's horses would fairly be considered the natural result of leaving the defendant's part of the fence in such a state of want of repair that the plaintiff's horses escaped into the defendant's pasture.

But we do not regard it as indispensable to the maintenance of this action that the vicious habits of the animal should have been known to the defendant.  But to recover for this injury to the plaintiff's horses, it should appear in some way that it was the natural consequence of the defendant's neglect under the particular facts

36

in the case, and which were known to the defendant. The defendant's neglect is more or less culpable in the view of the law, according to the circumstances under which it is suffered. It is in a case like this, more in the nature of a breach of contract than of a voluntary wrong, perhaps. But in all actions for breach of contract the damages recoverable will extend to all losses which result in fact from the breach of the contract, and which it may fairly be presumed the party violating the contract might have anticipated would follow his omission to perform it.

In the present case the law imposes upon the party the obligation of maintaining the portion of the fence through the defect of which the injury happened. The obligation and the liability are the same as if the duty were created by contract or by prescription, which is but one form of proving a contract or duty. We think, therefore, that all damages which the defendant might reasonably have anticipated might follow from his omission, are recoverable here. But as the present case went to the jury, it is evident no such question was taken into account by them. The charge made the defendant liable for damages in any way resulting from the escape of the horses. And we are not prepared to say that it can be determined, as matter of law, that the injury in question was one which might fairly be anticipated by one knowing the facts. That seems to be matter of fact. The law has established no rule upon the subject. The case of *Powell* v. *Salisbury*, 2 Younge & Jervis 391, where damages were allowed to be recovered where the plaintiff's horses escaped into the defendant's land through defect of fences which he was bound to repair, and were there killed by the falling of a haystack, is most analogous, perhaps, to the present, but by no means in point. So where the chain cable was warranted and through defect of construction broke, and the anchor was lost, it was held the value of the anchor so lost might be recovered; *Borradaile* v. *Branton*, 8 Taunt. 585; see also 1 Smith's Lead. Cases 132, *b* We think this question must be settled by the jury.

We are not able to find that the remedy against a party for consequential damages resulting from his omission to maintain his portion of the division fence, has ever in this State been made dependent upon the other party having built a legal fence on his

part. It must undoubtedly be shown that the injury resulted from the defect in that portion of the fence which it is the duty of the defendant to maintain. And unless the plaintiff has built his fence this could not well occur. Nor would it be likely to occur when the plaintiff's fence was more defective than that of the defendant. But it has generally been supposed that if the plaintiff's fences were so constructed that no defect in them contributed to the injury, that was all which could be required in the particular action; that any possible defect in the plaintiff's fences, at most, amounted to a remote and not a proximate neglect, and consequently did not preclude the plaintiff's recovery.

When the party in default has built no fence at all it may possibly merit a different consideration. It might, in such case, be regarded as negligence in the other party to turn in his cattle until he had proceeded to build the fences himself, under the statute. But where the party proceeds to the performance of the duty, and does it so defectively that an injury occurs to the other party, we think, under existing provisions of the statute in this respect, he is liable, and in this form of action.

Judgment reversed and case remanded.