## CATE *v.* CATE.

Trespass will not lie for a neglect to repair fences which a party is bound to repair, by reason of which plaintiff's cow escaped on to plaintiff's land and was there bitten by a dog.

Whether defendants would be liable in any form of action for such an injury, it not appearing that they incited the dog to this mischief, or were in any fault other than neglecting to repair the fence, or whether the injury is too remote, *quære.*

The responsibility arising from a neglect to repair fences is not limited to injuries to the land itself, but may extend to injuries to cattle.

TRESPASS, by Andrew J. Cate *v.* Edwin F. Cate and William Cate. It appeared that Andrew J. Cate and Edwin F. Cate owned adjoining farms, and that the fence had been divided, and that Andrew's cow, while upon Edwin's land, was bitten by a dog. Plaintiff offered evidence tending to show that the cow got into Edwin's field by passing over Edwin's defective fence. Subject to exception, the jury were instructed *pro forma*, that if Edwin's fence was defective, and the cow got over that fence, and the attack by the dog arose from and would not have happened without Edwin's neglect to build or repair the fence, they should find a verdict against Edwin for the actual injury caused by the dog's attack, even though Edwin did not in any manner incite or encourage the dog to make such attack. The jury found Edwin guilty, and William not guilty. Plaintiff agreed that if the above instructions are held at the law term to be erroneous, judgment shall be rendered in favor of both defendants.

*Marshall & Chase, and Morrison & Stanley*, for plaintiff.

*Minot & Mugridge, and S. C. & B. E. Badger*, for defendants.

BELLOWS, C. J. The case is simply this : That plaintiff's cow escaped into defendant's land through defect of fence which the latter was bound to repair, and was there bitten by a dog ; but it does not appear who owned the dog, or whether he was habitually there, or was or was not accustomed to bite, but he was not encouraged by defendants to bite plaintiff's cow in this instance.

There is nothing then to show that such an injury was or was not reasonably to be apprehended from the defendant's omission, and that question was not left to the jury. For that reason the verdict was set aside in *Saxton* v. *Bacon*, 31 Vt. 540. There the plaintiff's horses esaped into defendant's adjoining pasture through a fence that was defective and which defendant was bound to repair, and they were gored by a bull of defendant which was there kept; and the court held that the obligation and the liability are the same as if created by contract; that the defendant was liable for all damages which he might have anticipated might follow from his omission, and that this was a matter for the jury. Had the injury to the cow been caused by the illegal act of a third person after the cow escaped into defendant's pasture, the defendant would not have been liable for it. *Crain* v. *Petrie*, 6 Hill 522 ; 1 Ch. Pl., 395–6 ; *Vicars* v. *Wilcocks*, 8 East. 1. But nothing of that kind appears. According to the finding of the jury, the wrongful omission of the defendant caused the cow to come into the vicinity of the dog and receive the injury ; and there is nothing that shows that this injury by the dog was caused by the illegal act of any one, unless by the defendant's omission.

If defendant is liable here, he would be in all cases where, by the

wrongful omission of the defendant, plaintiff's cattle escaped into another's ground and were there injured by any accident, whether such injury was reasonably to be anticipated and foreseen or not. Suppose that the cow, having so escaped, was killed by lightning while under a tree on defendant's land, or by a railroad train which passed through his land, and without any wrongful act of the railroad company, it appearing that such injury would not have happened but for defendant's neglect to keep his fence in repair, would the defendant be liable ?

In *Powell* v. *Salisbury*, 2 Younge & Jervis 391, where plaintiff's horses escaped into defendant's land through a defect in his fence which he was bound to repair, and were killed by the fall of a haystack, it was held that defendant was liable, that the damage was not too remote.

So where defendant's horse escaped into plaintiff's land through a defective gate which the former was bound to repair, and kicked the plaintiff's horse, it was held that the damage was not too remote. *Lee* v. *Riley*, 34 L. J. R. (N. S.) C. P. 212, quoted in Sedgw. on Dam. (88), note 2. In *Dunckle* v. *Kocker*, 11 Barb. Sup. Ct. 387, a declaration for trespass by defendant's horse, it was alleged, by way of aggravation, that defendant's horse kicked plaintiff's horse;—held, not necessary to aver that defendant's horse was accustomed to kick, or that defendant knew it. So, where it appeared that the deceased, by defendant's negligence, was precipitated into the lock of a canal, and while there was suffocated by reason of the lock-keeper letting in the water, it was held that the representatives of the deceased could maintain the action under Ld. Campbell's Act, 9 & 10 Vict. C. 93—*Byrne* v. *Wilson*, 15 Irish Com. Law. 332—quoted Sedgw. on Dam. (88), note 2. And Sedgwick says (88) that in cases of illegal or mischievous conduct, the disposition of the courts is to make the party in the wrong liable for injurious consequences flowing from the illegal act, although they be very remote. So he says in note (p. 80) that he who commits a trespass must be held to contemplate all the damage which may legitimately follow from his illegal act, whether he might have foreseen it or not ; and so far as it is plainly traceable, he should make compensation for it ; and he distinguishes between cases of contract, and of trespass or other tort, holding that in the latter the damages are limited only by the rule which requires them to be certain in their nature and extent. Where the defendant's diseased sheep wrongfully entered upon plaintiff's land and infected his sheep, damages for such injury may be recovered. *Anderson* v. *Buckton*, 1 Str. 192 ; *Barnum* v. *Vandusen*, 16 Conn. 200. In that case it was held to be immaterial whether the defendant knew his sheep were diseased or not. So where vendor of a cow falsely represented her to be free from disease, and vendee placed her with others who were infected by the contact,—held, that vendor was liable. *Mullett* v. *Mason*, Law Rep., 1 C. P. 559—26 U. S. Dig. 143, § 37 ; much the same is *Fultz* v. *Wycoff*, 25 Ind. 321—26 U. S. Dig. 146, § 84. The same doctrine was applied in *Jeffrey* v. *Bigelow*, 13 Wend. 518, where defendant's agent sold his sheep knowing they had an infectious disease, and did not communicate the fact to plaintiff,

whose other sheep were infected and injured—citing Evans's Pothier, part 1, ch. 2, art. 3, p. 160.

So where defendant threw down plaintiff's fence, or left open his gate, and cattle of other persons entered directly and before notice to plaintiff, and destroyed his crops, it has been held that defendant would be liable. It would be otherwise, however, if after notice to plaintiff he had time to protect his fields. *Loker* v. *Damon*, 17 Pick. 284. In *Vandenburgh* v. *Truax*, 4 Denio 467, where defendant with a pickaxe chased a boy in a threatening manner, who fled into a store, and, running against a cask of wine, knocked out the faucet and spilled the wine,—it was held that defendant was liable for the loss of the wine. In that case Bronson, J., lays it down as the rule that if one do an illegal or mischievous act which is likely to prove injurious to others, or does a legal act in an improper manner and likely to injure others, he is answerable in some form of action for all the consequences which may directly and naturally result from his conduct. In *Guille* v. *Swan*, 19 Johns. 380, the defendant, who had gone up in a balloon, alighted in plaintiff's garden, and being in peril called for help, and a crowd rushed in to aid him, or from curiosity, and trampled down the vegetables, &c., and it was held (per Spencer, C. J.) that defendant was liable for the injury; holding that the circumstances would naturally draw a crowd around him, either from curiosity or to aid him, and, whether they heard his call for help or not, he would be responsible for the damage done, and that he ought to have foreseen the result. So where a person, against the law, furnished a slave with intoxicating liquor, by which he became drunk and laid out all night, and died in consequence,—the defendant was held liable to the master for the value of the slave—the court holding that the drinking and intoxication of the slave were the natural and probable consequences of selling liquor to him, and the lying out all night was the immediate effect of the intoxication, and the two produced death; and thus, without any unconnected influence to be perceived, the death has come from the intoxication which the defendant's act occasioned. *Berkley* v. *Harrison*, South Carolina court of appeals, 1847, quoted in Sedgw. on Dam. (88), note 5. So in *Wright* v. *Gray*, 2 Bay S. C. 464, stated in Sedgw. on Dam. (89), where defendant persuaded plaintiff's negro boy to ride his (the defendant's) horse at a race, and the boy was thrown against a tree and killed,—it was held that defendant was liable for the value of the boy—the court holding that a man who officiously presumes to interfere with the property of another, without his permission, is liable for all the consequences of such interference, whether he intended any injury to the owner or not. A similar doctrine is held in *Harrison* v. *Berkley*, 1 Strobhart 525 (S. C.)—7 U. S. Dig. 15, § 17. A similar doctrine was held in *McDaniel* v. *Emanuel*, 2 Rich. 455; and *Strawbridge* v. *Turner*, 9 La. 213, quoted in notes Sedgw. on Dam. (89). In an action for fraudulently selling diseased sheep as sound and healthy to the plaintiff, a butcher, in consequence of which, and the reports arising therefrom, a person who had agreed to sell plaintiff's mutton refused to fulfil his bargain, and others refused to buy

mutton from plaintiff's establishment,—it was held that plaintiff was not entitled to recover damages for the refusal of the person to sell, for that was a breach of contract for which plaintiff had an adequate remedy against the person himself; nor for the refusal of others to buy his mutton, for that resulted from a want of confidence in the plaintiff himself, the people assuming that he might sell the meat of diseased sheep for a good and merchantable article. The court lay it down as the rule that the damages to be recovered must be the legal and natural consequences arising from the tort, and not from the wrongful act of a third party remotely induced thereby, and they must proceed wholly and exclusively from the injury complained of. So is *Vicars* v. *Wilcocks*, 8 East. 1, where in an action for slander it was held that plaintiff could not recover damages for the loss of his place as a journeyman, having been illegally dismissed from the service before his time had expired in consequence of the slander, upon the ground that such dismissal was not the legal and natural consequence of the slander. So is 1 Ch. Pl. 395–6, and cases; and to the same effect in *Eisenlohr* v. *Swain*, 35 Penn. St. Rep. 107. So as damages for false imprisonment, plaintiff cannot recover for the loss of an opportunity to obtain employment as journeyman by reason of being unable to go to the person who was expected to engage him, because the damages are too remote — *Hoey* v. *Felton*, 11 C. B. N. S. 142; 1 Ch. Pl. 896, where it is said that the loss of a lieutenancy by imprisonment is too remote. So, also, is *Brown* v. *Cummings*, 7 Allen 507.

But in *Knight* v. *Gibbs*, 1 Adolph. & Ellis 43, which was an action for slanderous words spoken by a landlord to his tenant, in consequence of which the tenant dismissed the plaintiff, who was her lodger, although she testified that she did not believe what he said, but dismissed the plaintiff to avoid giving offence to the defendant. It was held that the plaintiff might recover for this special damage; and the case was distinguished from *Vicars* v. *Wilcocks*, on the ground that then there were two causes of special damage, *i. e.*, the words spoken, and the act of another. The distinction, however, would seem to be, that in *Vicars* v. *Wilcocks* the act of the other was illegal, and there was an adequate remedy against him; while in *Knight* v. *Gibbs* the act of dismissing the plaintiff does not seem to have been illegal, as it does not appear that she had engaged lodgings for any certain time.

Where a druggist carelessly labels a deadly poison as a harmless medicine, and sends it into market, and it is sold through several hands as and for such medicines, the druggist is liable to all who are injured by it. Sedgw. on Dam. 68, note 2, citing *Thomas* v. *Winchester*, 2 Seld. (N. Y.) 399.

In our own State it has been held, in a suit for injury to plaintiff's bridge by running logs of defendant, that plaintiff was entitled to recover, in addition to the value of so much of the superstructure as was destroyed, for the loss of tolls during the time that was reasonably required to repair it. In *Russell* v. *Fabyan*, 34 N. H. 218, it was held that a tenant who holds over is in as a wrong-doer, and had no right to build any fire upon the premises, and if misfortunes resulted from it he must bear the loss. Ib. 224, 225.

Independent of the case of *Saxton* v. *Bacon*, 31 Vt. 540, the weight of authority would favor the sustaining an action in some form for the injury to the cow, under the circumstances of this case.   In that case of *Saxton* v. *Bacon*, the omission of the defendant was regarded by the court as in the nature of a breach of contract, and therefore applied a rule as to damages similar to that which governs actions for breach of contract.

The rule laid down in *Hadley* v. *Baxendale*, 9 Excheq. 341, and which has been generally accepted, was this : that where a contract is broken, the damages to be recovered should be such as may fairly and reasonably be considered, either arising naturally, *i. e.*, according to the usual course of things from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties when the contract was made, as the probable result of the breach of it.

This rule has been substantially adopted in this State, in *Deming* v. *Grand Trunk Railway*, in Grafton co.   This case, as well as *Hadley* v. *Baxendale*, was against common carriers, for breach of contract in the transportation of merchandise.   In these cases the claim is founded upon contract, although for the breach of duty case may be maintained ; and there is some ground for saying that the breach of duty in neglecting to maintain fences which the law requires a party to maintain, has some analogy to the breach of duty of a common carrier.

In many cases the division of fences is matter of contract, including also the obligation to maintain them; and it may admit of some doubt, if the question were an open one, whether the mere omission to keep such fence in suitable repair, by which cattle of another escape on to the delinquent's land, ought to subject him to damages for all injuries that might happen to them there, when purely accidental, and in no sense reasonably to be anticipated or apprehended.   Still, by the statute, a party neglecting to repair division fence which he is bound to repair, is made liable for damages arising from such neglect; and if, on account of such neglect, the cattle of the adjoining owner escape into his land and are injured when they otherwise would not have been injured, the case comes within the terms of the statute ; but whether it would come within its spirit is the question.

Upon a careful consideration of the cases, we think that there is some preponderance of authority in favor of the position that, in a case like this, a party is in some form of action responsible for the consequences of his wrongful act, when they are distinctly traceable to that act, although such consequences may be both remote and accidental.

It may be suggested, also, that the mischievous consequences resulting from the breach of duty to repair division fences are too serious and harrassing to invite any relaxation of responsibility.

The view we take, however, of another question renders it unnecessary to decide this, and these suggestions are to be regarded as the views of the judge who delivers the opinion.

It is urged that this statute provision is confined to injuries to the

lands of adjoining owners alone, and does not extend to injuries to cattle ; but we think this construction is erroneous. In *Saxton* v. *Bacon*, 31 Vt. 540, before cited, a similar statute was held to extend to injuries to cattle, and we are satisfied that such should be the construction of ours.  The wrong complained of here is a mere *non feasance*, the omission to repair the fence ; and the remedy is by action on the case, and not trespass, as in the case of the neglect to repair the banks of a river whereby the plaintiff's land was overflowed.  1 Ch. Pl. 126.

The action here is trespass, and if the exception embraced that defect, as we understand it does, the verdict must be set aside and judgment be entered for the defendants.          *Judgment for defendants.*