GILMAN v. NOYES. ⎰ August 11, ⎱ 1876.

*Accord and satisfaction—Proximate and remote damages.*

| 57 | 627 |
|----|-----|
| 66 | 314 |
| 57 | 627 |
| 68 | 209 |
| 68 | 312 |
| 57 | 627 |
| 69 | 289 |
| 57 | 627 |
| 70 | 129 |
| 70 | 130 |

| 57 | 627 |
|----|-----|
| 74 | 27 |

In an action on the case, the evidence tended to show that the defendant, by whose negligence it was alleged the plaintiff's cattle had escaped from his pasture, said that if the plaintiff would look up the cattle he would pay him for the damage and trouble. *Held*, that this, if proved, would not amount to an accord and satisfaction.

The evidence tended to show that the plaintiff's sheep escaped from his pasture through the defendant's negligence, and wandered away and were killed by bears. *Held*, that it was a question for the jury whether the ~~plaintiff's~~ negligence was the proximate cause of the damage, which would depend upon whether it was natural and reasonable to expect that if the sheep escaped they would be destroyed in that way.

FROM Coös CIRCUIT COURT.

CASE, for carelessly leaving the plaintiff's bars down, whereby his cattle and sheep escaped, and he was compelled to expend, and did

---

* LADD, J., did not sit.

expend, time and money in hunting for the same, and his sheep were wholly lost.

The evidence tended to show that the defendant, in looking after his own cattle, left the plaintiff's bars down, and that his cattle, and three sheep belonging to one Marshall, and which the plaintiff was pasturing, were wholly lost. The defendant denied that said cattle and sheep escaped through the bars, and introduced evidence tending to show that they escaped through other fence of the plaintiff, and without fault on the part of the defendant. As tending to show that the defendant was liable, the plaintiff, without objection, testified that he called on the defendant, soon after he ascertained that his cattle and sheep had escaped, and claimed that they had escaped through his fault, and requested him to go and look them up; to which the defendant replied, that he could not then go, but that the plaintiff must look them up himself, and he would pay him what was right for the damage and for his trouble. The defendant did not admit that he made these statements, as testified to by the plaintiff, and claimed that whatever he did say was under a misapprehension. The evidence tended to show that the sheep were destroyed by bears after they had escaped from the plaintiff's pasture. They defendant claimed that the damages were too remote, and that they were not the natural consequences of the alleged careless acts of the defendant. The defendant requested the following instructions:

1. If the jury find to be true the statement of the plaintiff, that, when he went and first called on the defendant, the defendant told him that he was in for the damage, and he wanted him, the plaintiff, to hunt up the cattle, and he would pay the plaintiff what was right for the damage, and that the plaintiff assented to this, he cannot recover in this form of action.

2. That if the jury find that the plaintiff and the defendant agreed that the plaintiff should hunt up the cattle, and that the defendant should pay him what was right for the damages, this action cannot be maintained.

3. If the jury find that it was agreed by the parties that the plaintiff was to hunt up the cattle, and the defendant was to pay the plaintiff the expense and trouble of hunting, the plaintiff cannot recover for such trouble and expense so incurred at the request of the defendant in this form of action. His remedy would be assumpsit.

4. That, the sheep being the property of Marshall, the plaintiff cannot in this action recover the value of the same.

5. That if the jury find that the sheep were killed by bears after their escape from the pasture, the plaintiff cannot recover, as the damages would be too remote.

These requests the court denied, but did instruct the jury, among other things, that if the defendant left the plaintiff's bars down, and his cattle thereby escaped, he was entitled to recover for the time and money expended in hunting for them; that if the sheep were in his possession and care, and they escaped in consequence of the bars being left down by the defendant, and would not have been killed but for the

## GILMAN *v.* NOYES.

act of the defendant, he was liable for their value, whether the plaintiff was the absolute owner or not; that the statements made by the defendant were proper to be considered by the jury upon the question whether or not the damages to the plaintiff were occasioned by the acts of the defendant. To all of which refusals and instructions the defendant excepted.

The jury returned a verdict for the plaintiff, and assessed the damages for hunting for the cattle at $13.16, and for the sheep at $9. The defendant moved to set the verdict aside, and for a new trial.

The questions of law arising on the foregoing case were transferred by STANLEY, J., C. C.

*Dudley* and *Ray & Drew*, for the plaintiff.

*Aldrich & Shurtleff* and *Bingham*, for the defendant.

CUSHING, C. J. The objection to the requests for instructions in regard to the compromise is, that they are not based upon the evidence. The evidence was to the effect that the defendant admitted his liability, and said that he would pay the damage. But there was nothing said or done by the parties from which the jury could infer an accord and satisfaction if it had been pleaded, and that defence could not be taken at all without a plea to that effect.

As to the objection that the plaintiff could not recover because the sheep were the property of Marshall, it seems enough to say that it is very well settled in this state that a bailee has sufficient interest in the property bailed to sustain an action for damage done to it.

It should have been left to the jury to determine whether the injury was one for which the defendant's fault was the proximate cause. The court rightly refused to instruct the jury that the damage was too remote, because that was a matter for the jury to determine. I am not prepared, however, to hold, that the criterion, for determining whether the plaintiff's fault was the proximate cause of the damage, is, whether the damage would or would not have happened without the defendant's fault.

This matter of remote and proximate cause has been recently a good deal discussed in the case of fires occasioned by the negligent management of locomotives. Where the fire has spread from point to point and from building to building, the question to what extent the negligence was the proximate cause has been held to be for the jury to determine. But in no one of those cases, whether the damage was held to be proximate or remote, could it have happened at all except for the negligence complained of.

I think the doctrine of the cases now is, that the question whether the damage is remote or proximate is a question of fact for the jury, and that the jury have to determine whether the damage is the natural consequence of the negligence, and such as might have been anticipated by the exercise of reasonable prudence. If the damage would not have

happened without the intervention of some new cause, the operation of which could not have been reasonably anticipated, it would then be too remote. 2 Parsons on Contracts 179 ; *State* v. *Manchester & Lawrence Railroad,* 52 N. H. 552, and cases there cited ; *Fent* v. *Toledo, Peoria & Warsaw Railway Co.,* 59 Ill. 349—S. C. 14 Am. R. 13.

In the present case it appears that the evidence tended to show the intervention of such new cause,—viz., bears,—and it would have been for the jury to say whether it was natural and reasonable to expect that if the sheep were suffered to escape they would be destroyed in that way.

If these views are correct, the verdict must be set aside, and a new trial granted.

SMITH, J. I concur in the foregoing conclusions of the chief-justice, and for the reasons given by him. The principal question in this case has been much discussed in the English and American courts, though but little in this state. The rule, that the plaintiff can recover only when the defendant's act or negligence was the proximate cause of the injury, is one of universal application ; but the difficulty lies in determining when the cause is proximate and when remote. It is a mixed question of law and of fact, to be submitted to the jury under proper instructions. We have recently held that it is always for the jury to say whether the damage sustained is what the defendant ought to have expected, in the exercise of reasonable care and discretion. *Stark* v. *Lancaster, ante* 88, and authorities cited ; *McIntyre* v. *Plaisted, ante* 606 ; —see, also, *State* v. *M. & L. R. R.,* 52 N. H. 552 ; *Cate* v. *Cate,* 50 N. H. 144 ; *Underhill* v. *Manchester,* 45 N. H. 218.

The rule, as thus laid down, is also given in substance in 2 Parsons on Contracts 456, 2 Gr. Ev., sec. 256, and Sedgwick on Damages 88. The numerous cases in which this question has been discussed are cited by the above authors. It would be an unnecessary labor to review them in detail.

In this case the evidence tended to show the intervention of a new cause of the destruction of the plaintiff's sheep after their escape from his pasture, which could not reasonably have been anticipated. The only practicable rule to be drawn from all the cases, for determining this case, it seems to me, is, to inquire whether the loss of the plaintiff's sheep by bears was an event which might reasonably have been anticipated from the defendant's act in leaving his bars down, under all the circumstances of this case. If it was a natural consequence which any reasonable person could have anticipated, then the defendant's act was the proximate cause. If, on the other hand, the bears were a new agency, which could not reasonably have been anticipated, the loss of the sheep must be set down as a remote consequence, for which the defendant is not responsible.

The jury were instructed that if the sheep escaped in consequence of the bars being left down by the defendant, and would not have been killed but for this act of the defendant, he was liable. Under these

instructions the jury could not inquire whether the destruction of the sheep by the bears was an event which might reasonably have been anticipated from the leaving of the bars down, and for this reason I agree that the verdict must be set aside.

LADD, J. I am unable to free my mind from considerable doubt as to the correctness of the ground upon which my brethren put the decision of this case.

The defendant requested the court to charge that, if the jury found that the sheep were killed by bears after their escape, the damages would be too remote. This the court declined to do, but did instruct them that if the sheep escaped in consequence of the bars being left down by the defendant, and would not have been killed but for that act of the defendant, he was liable for their value. Both the request and the instruction went upon the ground that the question of remoteness —all the facts being found—was for the court, and not for the jury. Upon that distinct and simple question the defendant claimed one way and the court held the other. I understand it to be the opinion of my brethren that neither was right; that the question of remoteness was for the jury, and that the court erred in not so treating it. Whether it is for the jury or the court, every one who has considered the matter will agree that it is almost always a troublesome question, and often one attended with profound intrinsic difficulty.

The verdict here settles (1) that the bars were left down by the defendant; (2) that the sheep escaped in consequence thereof; (3) that they would not otherwise have been killed. Was the defendant's act the proximate cause of the damage? Was it the cause in such sense that the law will take cognizance of it by holding the defendant liable to make reparation in damages? And is that question one for the court, or for the jury, to decide? The sheep would not have been killed, the jury say, but for that act: does it follow that the damage was not too remote? Certainly, I think, it does not. That one event would not have happened but for the happening of some other, anterior in point of time, doubtless goes somewhat in the direction of establishing the relation of cause and effect between the two. But no rule of law as to remoteness can, as it seems to me, be based upon that one circumstance of relation alone, because the same thing may very likely be true with respect to many other antecedent events at the same time. The human powers are not sufficient to trace any event to all its causes, or to say that anything which happens would have happened just as it did but for the happening of myriads of other things more or less remote and apparently independent. The maxim of the schoolmen,— *Causa causantis, causa est causati,*—may be true, but it obviously leads into a labyrinth of refined and bewildering speculation whither the law cannot attempt to follow. This case furnishes an illustration. The jury say the sheep would not have been killed by bears but for their escape, and would not have escaped but for the bars being left down. But it is equally certain, without any finding of the jury, that they

would not have been killed by bears if the bears had not been there to do the deed; and how many antecedent facts the presence of the bears may involve, each one of which bore a causative relation to the principal fact sufficiently intimate so that it may be said the latter would not have occurred but for the occurrence of the former, no man can say. Suppose the bears had been chased by a hunter, at any indefinite time before, whereby a direction was given to their wanderings which brought them into the neighborhood at this particular time; suppose they were repulsed the night before in an attack upon the bee-hives of some farmer in a distant settlement, and, to escape the stings of their vindictive pursuers, fled, with nothing but chance to direct their course, towards the spot where they met the sheep; suppose they were frightened that morning from their repast in a neighboring cornfield, and so brought to the place of the fatal encounter just at that particular point of time.

Obviously, the number of events in the history not only of those individual bears, but of their progenitors clear back to the pair that, in instinctive obedience to the divine command, went in unto Noah in the ark, of which it may be said, but for this the sheep would not have been killed, is simply without limit. So the conduct of the sheep, both before and after their escape, opens a field for speculation equally profound and equally fruitless. It is easy to imagine a vast variety of circumstances, without which they would not have made their escape just at the time they did though the bars were down, or, having escaped, would not have taken the direction to bring them into the way of the bears just in season to be destroyed, as they were. Such a sea of speculation has neither shores nor bottom, and no such test can be adopted in drawing the uncertain line between consequences that are actionable and those which are not.

Some aid in dealing with this question of remoteness in particular cases is furnished by Lord Bacon's rule, *In jure causa proxima, non remota spectatur*, and other formulas of a like description, because they suggest some boundaries, though indistinct, to a wilderness that otherwise, and perhaps in the nature of things, has no limit.

Where damages are claimed for the breach of a contract, it has been said that the nearest application of anything like a fixed rule is, that the injury for which compensation is asked should be one that may be fairly taken to have been contemplated by the parties as the possible result of the breach of contract. COCKBURN, C. J., in *Hobbs* v. *London & S. W. Railway Co.*, L. R. 10 Q. B. 117. In tort, they must be the legal and natural consequence of the wrongful act. Sedgwick on Damages 82, and cases cited; 2 Gr. Ev., secs. 252–256, and cases cited. But an examination of the numerous cases where this matter has been carefully and learnedly discussed, shows that the intrinsic difficulties of the subject are not removed, although they may be aided, by the application of such rules. Whether the extent, degree, and intimacy of causation are sufficient to bring the injurious consequences of an act within the circle of those wrongs for which the law supplies a

remedy, still remains the great question to be determined in each case upon its individual facts. That the subject is one beset with difficulties is conspicuously shown by the great number of cases from *Scott* v. *Shepherd*, 2 Wm. Bl. 892 (where Sir WILLIAM BLACKSTONE was unable to agree with the court), down to the present time, in which judges of equal learning and ability have differed as to the application of rules by which all admit they are to be governed.

The recent case of *Brand* v. *Hammersmith & City Railway Co.*, L. R. 1 Q. B. 130, well illustrates this remark, although the construction of a statute was there involved. It was held by the court of queen's bench (MELLOR and LUSH, JJ., delivering opinions), that the owner of a house, none of whose lands have been taken for the purposes of a railway, cannot, under certain statutes, recover compensation in respect of injury to the house,—depreciating its value,—caused by vibration, smoke, and noise in running locomotives with trains in the ordinary manner after the construction of the railway. Upon error to the exchequer chamber this decision of the queen's bench was reversed by BRAMWELL, B., KEATING, and MONTAGUE SMITH, JJ., CHANNEL, B., dissenting. Sir WILLIAM EARLE, while chief-justice of the common pleas, had also prepared an opinion sustaining the judgment of the queen's bench, which was not delivered because the formal judgment of the court was delayed till after his resignation. L. R. 2 Q. B. 223, note p. 246.

The cause was then carried, upon error, to the house of lords, and the judges were called in. Of the judges who returned answers, five were in favor of affirming the judgment of the exchequer chamber, viz., WILLES, KEATING, and LUSH, JJ., and BRAMWELL and PIGGOTT, BB.; while Mr. Justice BLACKBURN delivered a strong opinion the other way. In the house of lords, Lord CHELMSFORD and Lord COLONSAY were for reversing the judgment of the exchequer chamber, while the lord chancellor was for affirming it. So that, of all the judges and law lords who examined the question (including Sir WILLIAM EARLE), six were of the opinion that the damages could not be recovered, and seven of a contrary opinion; while LUSH, J., changed his mind between the hearing in the queen's bench and that before the house of lords, and delivered an opinion the other way. The case was finally decided against the opinions of a majority of the judges who considered it.

The question is, whether courts can relieve themselves from troublesome inquiries of this description by handing them over to the jury for determination. I am not now prepared to admit that they can. In this case, as we have seen, the verdict settles that the defendant left the bars down, that the sheep escaped in consequence, and that they would not have been killed but for their escape. Clearly, no disputed fact is left unsettled. The only question left open is, whether the damage is within or without the line drawn by the law as the boundary between those injuries for which the law compels compensation to be made and those for which it does not. It is the law that

furnishes remedies. Whether any act or default amounts to a legal wrong and injury for which compensation may be recovered depends upon the law, and is to be determined by an application of rules either furnished by the legislature in the form of statutes, or found existing in the common law. If the law takes no cognizance of an act, furnishes no remedy for its injurious results, then there is no remedy ; and though it may be wrong in a sentimental or moral point of view, the sufferer can have no recompense. And I cannot see what difference it makes in this respect whether the rule is established by a statute, or comes from the common law. That A can recover damages against B for an assault and battery committed upon him by the latter, depends just as much upon a rule of positive law, in this state, as that he may recover against C, who has unlawfully furnished liquor to B, who, in a state of intoxication produced by the liquor, makes the assault. One is a provision of the common law ; the other, of a statute. When the court of South Carolina held that where a person, against the law, furnished a slave with intoxicating liquor, by which he became drunk and lay out all night, and died in consequence, the owner of the slave could recover his value against the person who furnished the liquor *(Berkley* v. *Harrison,* cited in Sedgw. on Dam. 89), they were declaring and applying a rule of law as much as though that remedy had been given by a statute similar to ours. So it is in the great mass of cases with which the books are filled : the question as to remoteness is determined by the court, and the rule administered as a rule of law. See cases cited in Sedgw. on Dam., ch. iii, *passim.* A large number of English and American cases might be added, were any citation of authorities necessary.

In *Hobbs* v. *The London & S. W. Railway Co.,* already referred to, the plaintiff, with his wife and two children, took tickets on the defendants' railway from Wimbledon to Hampton Court, by the midnight train. They got into the train, but it did not go to Hampton Court, but went along the other branch to Esher, where the party were compelled to get out. It being so late at night, the plaintiff was unable to get a conveyance or accommodation at an inn ; and the party walked to the plaintiff's house, a distance of about five miles, where they arrived about three in the morning. It was a drizzling night, and the wife caught cold and was laid up for some time, being unable to assist her husband in his business as before, and expenses were incurred for medical attendance. The jury gave £28 damages,—viz., £8 for the inconvenience suffered by having to walk home, and £20 for the wife's illness and its consequences. The court held the £20 too remote. BLACKBURN, J., after stating the rule substantially as given by the chief-justice, says,—" For my own part, I do not feel that I can go further than that. It is a vague rule, and, as BRAMWELL, B., said, it is something like having to draw a line between night and day : there is a great duration of twilight when it is neither night nor day." And further on : " I do not think it is any one's fault that it cannot be put more definitely. I think it must be left as vague as ever as to where

the line must be drawn,—but I think, in each case, the court must say whether it is on the one side or the other; and I do not think that the question of remoteness ought ever to be left to a jury. That would be, in effect, to say that there shall be no such rule as to damages being too remote; and it would be highly dangerous if it was to be left generally to the jury to say whether the damage was too remote or not."

Of course, all matters of fact, with respect to the causative relation that exists between the act complained of and the injurious consequences for which damages are sought, must be found by the jury;—and so, in one sense, it may be said that the question of remoteness is for the jury, under proper instructions by the court;—but my doubt is, whether proper instructions by the court should not contain specific direction as to whether any given fact of injury, if found proved, would or would not, with respect to the alleged cause, occupy the position of remoteness beyond the actionable degree.

In the present case, if all the facts found by the jury had been well pleaded in the declaration, and there were a demurrer, would it not be the duty of the court to say whether the action could be maintained?

There are a few American cases which seem to give countenance to the view upon which this case has been decided by the court. *Fairbanks* v. *Kerr*, 70 Pa. St. 86, *Saxton* v. *Bacon*, 31 Vt. 540, *Fent* v. *Toledo, Peoria & Warsaw Railway Co.*, 59 Ill. 349, are, perhaps, to be so regarded.

Should it be said that the question, whether a given consequence is one which might fairly be anticipated by one knowing the facts, is in its nature a question of fact, it must at the same time be admitted that it is a fact which lies rather in the region of conjecture than of evidence, and must be determined by an appeal to the experience and knowledge of human nature, and the natural sequence of cause and effect possessed by him who is to decide it, rather than by weighing testimony and balancing proofs, while it is at the same time pure matter of law whether a given act is prohibited, and pure matter of law and construction whether a remedy is given by the law, written or unwritten, for an injury sustained in consequence of such act. But, however the American cases referred to are to be understood, it seems to me the great weight of authority is against the conclusion of the court; for every case, where the simple question of remoteness has been determined by the court, and the rule applied as a rule of law, would seem to be a direct authority the other way. Those cases are too numerous and too familiar to need citation.

The charge of the court was in accordance with this view. The jury were required to find whether the act of the defendant in leaving the bars down was an event without which the loss would not have occurred; and then the court undertook to apply a rule of law by saying that, if that particular relation of cause and effect did exist, the consequence was so near, so direct, and followed so naturally from the cause, that it must be regarded as a legal consequence for which the defend-

ant should be held to make reparation in damages. I am not prepared to say that this was error.

As the case is disposed of upon different grounds, it is unnecessary to consider whether the holding of the court upon this question of remoteness was right or not. A few cases may, however, be referred to, which bear more or less directly upon that question, as well as the main question I have been considering. In *Powell* v. *Salisbury*, 2 Y. & J. 391, the plaintiff declared in case against the defendant, for not repairing his fences, *per quod* the plaintiff's horses escaped into the defendant's close, and were there killed by the falling of a haystack:—held, that the damage was not too remote, and that the action was maintainable. In *Lee* v. *Riley*, 18 C. B. (N. S.) 722, the defendant's mare strayed into a field belonging to the plaintiff, through the defect of a fence which the defendant was bound to repair, and kicked the plaintiff's horse:—held, that the defendant was responsible for his mare's trespass, and that the damage was not too remote. In *Lawrence* v. *Jenkins*, L. R. 8 Q. B. 274, the plaintiff's cows strayed upon the defendant's close through a gap in the division fence, made by the carelessness of the defendant's servants in felling a tree upon it, and there fed on the leaves of a yew tree, and died in consequence:—held, that the damage was not too remote, and that the defendant was liable to the plaintiff for the loss of the cows. In *Cate* v. *Cate*, 50 N. H. 144, a question very similar to this was left undecided. But BELLOWS, C. J., says,—" Upon a careful consideration of the cases, we think there is some preponderance of authority in favor of the position that, in a case like this, a party is in some form of action responsible for the consequences of his wrongful act, when they are distinctly traceable to that act, although such consequences may be both remote and accidental." In *Davis* v. *Garrett*, 6 Bing. 716, the defendant contracted to carry in his barge the plaintiff's lime, and the master of the barge deviated unnecessarily from the usual course, and during the deviation a tempest wetted the lime, and the barge taking fire, the whole was lost.

The defendant was held liable for the lime, the cause of the loss being sufficiently proximate. The court say in their opinion, delivered by TINDAL, C. J.,—" We think the real answer to the objection [that of remoteness] is, that no wrong-doer can be allowed to apportion or qualify his own wrong." But in *Greenland* v. *Chaplin*, 5 Exch. (W. H. & G.) 243, POLLOCK, C. B., says,—" I am desirous that it may be understood that I entertain considerable doubt whether a person who is guilty of negligence is responsible for all the consequences which may under any circumstances arise, and in respect of mischief which could by no possibility have been foreseen, and which no reasonable person would have anticipated."

Upon the other questions in the case I agree with my brethren, for the reasons given by them.

According to the views of a majority of the court, there was

*A new trial granted.*