MICHAELIS v. HAUPT et al.    (No. 6195.)

(Court of Civil Appeals of Texas.    San Antonio.
April 30, 1919.    Rehearing Denied
May 28, 1919.)

WILLS ☞535 — CONSTRUCTION — EXCLUSION FROM PROVISIONS.

A will in which the testator provided that "each heir" should take an undivided interest in certain land, and after some intervening language, which does not establish any rule, states, "Their is one exception to this rule," and then recites that his afflicted daughter's husband and grown sons, who had not cared for her, should not have any interest in his land, *held* not to exclude such afflicted child from an interest in such land; no other provision being made for her.

Appeal from District Court, Hays County; M. C. Jeffrey, Judge.

Suit by G. B. Haupt and others against M. G. Michaelis. From a judgment for plaintiffs, defendant appeals. Reversed and rendered in part, and affirmed in part.

W. W. Searcy, of Brenham, and R. E. McKie, of San Marcos, for appellant.
Will G. Barber, of San Marcos, for appellees.

MOURSUND, J.    G. B. Haupt, L. M. Haupt, Mrs. Touay Barbee, W. H. Barbee,

Jerry M. Nance, Jr., E. P. Nance, Mrs. Bassie Nance and her husband, J. M. Nance, and Mrs. Leila Cooper brought this suit against M. G. Michaelis in trespass to try title and for partition of a tract of 2,830 acres out of the Andrew Dunn and McCarver surveys in Hays county, Tex.

Plaintiffs alleged that they were the owners in various portions of an undivided eleven-twelfths interest in the said 2,830-acre tract of land, alleging that they own their respective interests by inheritance from W. W. Haupt and Mrs. Sarah A. Haupt, both deceased, or by transfers from the heirs of said deceased persons. Plaintiffs alleged that M. G. Michaelis was claiming and in possession of an undivided one-sixth interest in said land, and that he had been in possession thereof since June 1, 1914, and they prayed judgment establishing title in them to an eleven-twelfths interest, for rents from M. G. Michaelis in the sum of $40 per month from June 1, 1914, to date of trial. Plaintiffs alleged specifically that G. B. Haupt, L. M. Haupt, Mrs. Leila Cooper, Mrs. Touay Barbee, Mrs. Bassie Nance, and Mrs. Alice Landers were the only children of W. W. Haupt and Mrs. Sarah A. Haupt; that the said W. W. Haupt and Sarah A. Haupt owned the 2,830 acres of land in controversy at the time of their death; that they are both dead, and Mrs. Sarah A. Haupt died intestate, and each of said children inherited an undivided one-sixth of her one-half interest in said land, or an undivided one-twelfth interest. Plaintiffs further alleged that W. W. Haupt died prior to the death of his wife, leaving a will, which is set out in plaintiffs' petition, and plaintiffs claim that under said will all of the property of W. W. Haupt was left to five of his children, to wit, G. B. Haupt, L. M. Haupt, Mrs. Leila Cooper, Mrs. Bassie Nance and Mrs. Touay Barbee, to the exclusion of Mrs. Alice Landers. Plaintiffs prayed for a construction by the court of the will giving same the effect contended for, for an adjudication of the interest of each of the plaintiffs, and decreeing that M. G. Michaelis owned no interest in the said land, but, in case he should be found to own an undivided one-twelfth interest, then decreeing that interest to him and canceling any further claim, praying for a recovery of the rents as aforesaid from said Michaelis, and praying for partition.

Defendant answered by general demurrer, special exceptions, a general denial, and plea of not guilty, and a special answer pleading title in fee simple to an undivided one-sixth interest in the 2,830 acres of land described in plaintiffs' petition.

The cause was submitted upon special issues, which being answered favorably to plaintiffs, judgment was entered in their

favor, restricting defendant to a one-twelfth interest in the land, fixing the interests of the respective plaintiffs, appointing commissioners to partition the land, and awarding plaintiffs $320.75 damages for the use of the one-twelfth interest to which it was held he had no title. In making the foregoing statement, we have copied in part the statement in appellant's brief.

W. W. Haupt and his wife, Mrs. Sarah A. Haupt, owned as community property a tract of land out of the McCarver league, supposed to contain 400 acres, and a tract out of the Dunn league, supposed to contain 2,000 acres. He conveyed to his five children, other than Mrs. Alice Landers, about 257 acres out of the McCarver land, designated the field land, dividing the same into five parcels, each receiving approximately one-fifth thereof. After his death all of the children, and the husband and children of Mrs. Landers, conveyed a tract of about 125 acres of the McCarver land to Mrs. Sarah Haupt. Mrs. Haupt afterwards conveyed this land, the deeds calling for 129.3 acres, to four of the children; it having been arranged for one of them to receive a conveyance of Mrs. Cooper's interest. A vendor's lien was retained in some of the deeds to secure the payment of notes to Mrs Landers. The arrangement was made for the five children other than Mrs. Landers to pay her $1,000. This was shown to be for her interest in some of the land, and, the evidence indicates, was for what her interest was conceived to be worth in the entire McCarver tract. It was afterwards ascertained, according to plaintiffs' petition, that the pasture land, when surveyed out, was found to contain 2,830 acres, including 10 acres out of the McCarver league, which 10 acres constituted no part of the 400-acre tract.

The defendant is the owner, by purchase from the guardian of Mrs. Landers, of all of her interest in said 2,830 acres of land. As Mrs. Haupt died intestate, there is no question but that defendant acquired a one-twelfth interest in the land, being the interest inherited by Mrs. Landers from her mother. After defendant had purchased as aforesaid, the will of W. W. Haupt was admitted to probate, and it was contended by appellees that thereby he excluded Mrs. Landers and bequeathed his interest in said land to the other five children, and therefore defendant did not acquire any interest in the half owned by W. W. Haupt at the time of his death. That contention was sustained on the trial of this case. The will reads as follows:

"As I am past my three score years and ten, it becomes my duty to provide for the future.

"My land is all surrounded by fence which my son Lewis (and every one in the neighborhood knows its boundaries).

"I have already laid off my field in 50-acre lots and all the children have drawn shares and measured off and selected their lots and are satisfied with their selection. These are on the M. M. McCarver league. The balance of my land lies on the west end of the McCarver tract. Some, or in all on the McCarver tract 400 acres.

"The balance of my land (some 2,000 acres or more acres) (see records in San Marcos deed) lies on the Dunn league (Andrew Dunn).

"That is held as pasture land and each heir should have an undivided interest in said pasture—as 150 acres on the west end of the McCarver league. As I expect the most of my children to build houses on west end the McCarver league. I desire that each one should occupy all the land necessary to accommodate the necessity of the land around the house.

"Their is one exception to this rule. I don't want A. P. Landers to ever have any interest whatever in any part of this land. Nor his two children, Willie & Johnnie. His wife, my daughter Alice, has lived with me five years and she is entirely incompetent to do anything & has to be taken care of all her life.

"My wife, Sarah Ann, as long as she lives must be provided from the products of this place, as far as it is able to do so, with all the necessaries & comforts of this life. I have a few dollars in the Wood National Bank, the Ed. Green First National Bank, both of San Marcos, and the Groos Bank of Kyle, all of which is at her disposal and use. Now to sum up, there is not a child of mine, who would not spend the last dime for their mother's comfort. As for A. P. Landers I ask no favors from him and don't want any. As for his two sons Willie & Johnnie, my children can give them money if they choose, but they must be deny any of my land.          [Signed]  W. W. Haupt."

Appellees argue that the words "There is one exception to this rule," must be held to relate back to the statement that each heir should have an undivided interest in the pasture, for the reason that such statement announces a rule, and the intervening language does not announce a rule. The testator states that he expected most of his children to build houses on the west end of the McCarver league, and that he desires that each one should occupy all the land "necessary to accommodate the necessity of the land around the house." Perhaps he had the mental training and analytical mind necessary to comprehend that, as to bequeathing the pasture land, he was announcing a rule, and, as to giving land to those who built houses, he was not announcing a rule. If he did, he failed to exhibit it in writing the will; for appellees say in argument that he identified Mrs. Landers in "his careless way" by identifying her share. It appears reasonable that, no matter how ignorant or careless a man may be, if he writes a will for one purpose, namely, to disinherit one child, he would say so, as it would take no particular skill, such as is imputed to Haupt by appellees when they contend that he must by the use of the word "rule" have referred back to

the statement that "each heir" should share in the pasture land. When we consider the statement, "Their is one exception to this rule," alone, it appears that it was intended to name a person or class of persons as being excepted from some provision theretofore made. When it is considered in connection with the next sentence, which was undoubtedly designed for the purpose of explaining it, the result is disappointing, and we enter the domain of conjecture as to why or for what purpose he used such expression. He names no heir who is to be excepted, so we would naturally say he did not refer back to the statement that each heir is to have an undivided interest. He does not appear to speak of the land on which houses are to be built or the additional land which the children are authorized to occupy, but of all the land. The phrase, "Their is one exception to this rule," introduces matter apparently foreign to what precedes such language, unless the testator regarded A. P. Landers and his sons as included in the words "each heir." We do not believe he regarded them as heirs, but we do believe that he had an idea that they might assert rights in the land by virtue of Mrs. Landers' ownership of an interest, or by inheritance from her, and that he intended to provide against that contingency. If he had consulted a lawyer, perhaps Mrs. Landers would have been restricted to a life estate, or a provision made that the land should go to the other children and that each should pay her a certain sum. To charge Haupt with knowledge that his plainly expressed desire to forever exclude Landers and his sons would not accomplish his purpose in law would be to credit him with legal training not displayed in drawing the will, and especially when drawing a provision for the benefit of his wife. There can be no doubt of his purpose to provide that neither A. P. Landers nor his two sons should ever have any interest in the land. The language is emphatic, and probably intended to cover every contingency that the future might hold in store by which such persons might, in the absence of a provision to the contrary, become entitled to an interest in the land. Now, if he did not know that disinheriting his daughter would prevent them from ever obtaining an interest, and render unnecessary any provision that they should never have any interest, it follows that he might have thought they would take some interest with Mrs. Landers, which would explain the provisions under discussion. If he knew that disinheriting Mrs. Landers would effectually deprive them of all interest, and he intended to disinherit her, he need not have stated so explicitly that he did not want them to ever have any interest whatever in any part of this land. After expressing his desire with respect to Landers and the boys, he states that Mrs.

Landers has lived with him five years and is entirely incompetent to do anything and has to be taken care of all her life. This statement was intended most likely as explanatory of his attitude towards Landers and the boys. It implies that they have not taken care of her, but have made it incumbent on him to do so; that, although incompetent to do anything and in a condition requiring that she be taken care of all her life, her husband and sons have failed to do their duty by her. It certainly cannot be construed as a provision for Mrs. Landers. There is not a word to the effect that his other children are to take care of her, or that one-sixth of the property is to be held in trust for her. It must be conceded that it is highly improbable that a father would exclude an afflicted daughter and not even state that he expected or required the other children to take care of her. He makes provision for his wife, not as would be done if the will was drawn by a lawyer, but still in what must have appeared to him to be a satisfactory way, and then states that there is not a child of his who would not spend the last dime for their mother's comfort. He does not make any such statement as to Mrs. Landers, but, if he intended to exclude her, it seems natural that he would have in some way expressed either his desire or his belief that the other children would care for her. The testator again refers to A. P. Landers and his sons right at the end of the will, but again fails to say that Mrs. Landers shall not take under the will. It is argued by appellees that the statement by the testator that his children could give Willie and Johnnie money if they chose, but they must be denied any of his land, indicates that the appellees were to receive more than Mrs. Landers, or else there would be no occasion to say that they could give her children money. The argument is persuasive, but here again it is impossible to tell what was in the testator's mind. If he thought he had so provided that even after Mrs. Landers' death her boys could not claim the land, he might state that his children could give them money, and again emphasize that they are not to receive any land. Again, he may have had in view that Mrs. Landers and the children who would assist her in money matters could give the boys money, but could not let them have any land.

Appellees say:

"The wording, writing, and construction of the paper shows it to be inaccurate and crude. It is just such a paper as one will expect to find imperfect, yet, when it is read over and over, we think no one will have fair doubt as to which one of his six children Mr. Haupt meant should be the exception to the rule. If so, you have found the intention which it is the duty of the court to respect, or at least by necessary implication .Mrs. Landers is identified as the one not to take."

It appears to us that they are in the attitude of assuming that the use of the words, "Their is one exception to this rule," was made accurately and with a complete and thorough understanding of what a rule is, and of the impropriety of using such an expression thoughtlessly or carelessly, and, having made such assumption, of jumping to the conclusion that as to the other sentences the testator's work is inaccurate and crude, and he did not mean what he said, but meant something else.

It occurs to us that there is much greater likelihood of inaccurate use of the expression, "Their is one exception to this rule," than of the language following it. It is not reasonable to suppose that a man would one instant have in his mind the thought that he was going to except his daughter from the benefits of his will, and write down the thought that he was going to make an exception, and instantly follow it up by a plain, unequivocal statement that other persons are not to have any interest in his land.

We believe that the logical way to construe the will is to minimize the importance of the expression, "Their is one exception to this rule," instead of magnifying it and making every other statement give way to it. We think it should be considered as an introductory phrase to what is to follow, used for no purpose except to introduce the thought expressed in the following sentences. There is no getting around the fact that when the testator said "each heir" he included Mrs. Landers, or the further fact that he did not thereafter say that she should not take part of the estate. To exclude her, it is necessary first to be certain that he intended to create an exception to the words "each heir," and then to say that, although he failed to thereafter state an exception, we will deduce by implication that he intended to name Mrs. Landers as the one to be excepted because the persons he did name were not heirs, and were her husband and grown sons, who had not cared for her.

It is urged by appellees that, if appellant's construction is adopted, Haupt accomplished nothing by his will. This statement is not accurate unless it be assumed that the provision made for Mrs. Haupt is meaningless, and also the provision authorizing the children who erect houses to occupy additional land. We cannot know whether the sole motive of the testator was to prevent Landers and his sons from ever obtaining an interest in the land. If it was, and he failed, it is because the law fails to give the desired effect to his plainly expressed wish, and not by reason of any doubtful construction placed upon the language used. He could have accomplished such purpose by pretermitting his afflicted child, but no court is authorized to do this for him. The will contains a clear devise to Mrs. Landers as one of the heirs, which is nowhere negatived by language purporting to refer to her, and it is only by conjecturing that a certain doubtful expression was used for the purpose of referring to her that even an issue can be raised as to his intention towards her. Every true parent recognizes the moral obligation to provide for his afflicted children, and a construction which would deprive such a child of its share of the estate, without even expressing a desire that those receiving the estate should care for the afflicted one, should not be permitted to stand upon conjecture as to what was meant by provisions purporting to deal with others. We conclude that the court should have construed the will to vest in Mrs. Landers a one-sixth interest in the land in controversy. Believing, as we do, that if the language is given its plain, ordinary meaning, the intention to bequeath to Mrs. Landers a one-sixth interest is clear, we conclude that it is unnnecessary to pass upon questions relating to the charge, and to evidence which we regard as of doubtful admissibility.

The case has been well briefed, and the authorities relied on have been considered. It is obviously unprofitable for us to discuss fact cases when a will of such original and unusual language as the one involved herein is presented for construction.

The judgment of the trial court will be reversed in so far as it construes the will and awards plaintiffs a recovery of the one-twelfth interest to which they sought to establish title as against defendant's claim thereto; also in so far as it awards plaintiffs a recovery of damages and costs; and upon each of said matters judgment will be rendered in favor of defendant. That is, defendant will be adjudged to own a one-sixth interest in the land in controversy instead of one-twelfth, and the plaintiffs' interests will be reduced to correspond with the change thus made; it will be adjudged that plaintiffs take nothing by their claim for damages; also that the costs incurred in the trial court be adjudged against plaintiffs in so far as incurred up to the date of the judgment of the trial court. In all other respects the judgment will be affirmed.

Reversed and rendered in part; affirmed in part.