(No. 15614.—Judgment affirmed.)

W. C. McKee, Appellee, *vs.* J. E. Trisler, Appellant.

*Opinion filed February 19, 1924—Rehearing denied April 2, 1924.*

1. Trespass—*when Supreme Court can consider only questions of law.* In an action of trespass every controverted question of fact is determined by the judgment of the Appellate Court affirming that of the trial court, and only questions of law can be considered in the Supreme Court.

2. Same—*when declaration is not at variance with the evidence.* In an action of trespass for the killing of a mule by the defendant's bull on the plaintiff's premises, the allegation of the declaration that the mule died from its injuries is not at variance with testimony of a veterinary that he gave the mule an injection of chloroform to put her out of her misery when he saw that it was impossible to save her.

3. Same—*what evidence is admissible to prove value of a mule killed by defendant's bull.* In an action of trespass for the killing of a mule by the defendant's bull on the plaintiff's premises anyone who has some knowledge of the value of mules may give his opinion, but evidence of market quotations or opinions as to the value of mules in distant cities is not competent.

4. Same—*common law rule as to trespass by domestic animals.* Under the common law the owner of domestic animals, such as cattle, is bound at his peril to keep them off the lands of other persons or respond in damages for their trespasses, whether or not the animals escaped against their owner's will and without negligence on his part; and no person is bound to fence his close against an adjoining field.

5. Same—*common law rule as to trespass by domestic animals is in force in Illinois.* Since the act of 1895 (Laws of 1895, p. 4,) making it unlawful for certain domestic animals to run at large the common law rule as to trespasses by such animals is restored in Illinois, and the owner of such animals is required to keep them off the lands of other persons and is liable for their trespasses.

6. Same—*act relating to fences relieves owner of domestic animals of part of his common law liability.* The statute regulating the duty of adjoining land owners respecting fences and requiring each owner to maintain a just proportion of a division fence has the effect of relieving each owner of his common law liability as to that part of the fence where the duty is cast upon the other.

7. Same—*statute relating to fences has not abrogated common law rule as to trespasses by domestic animals.* The statute requiring each adjoining land owner to maintain a just proportion of a division fence has no relation to outside fences and does not abrogate the common law rule as to trespasses by domestic animals, except as to that part of a division fence which an adjoining owner is required to maintain; and even in such case the owner of trespassing animals is liable if the adjoining owner has maintained his fence according to statutory specifications.

8. Same—*what instruction is proper in action for trespass by bull breaking through division fence.* In an action of trespass for the killing of a mule by the defendant's bull on the plaintiff's premises, which adjoined the property of the defendant, it is proper to instruct the jury that if the fence between the adjoining premises was a division fence and the bull came through a part of the fence assigned to the defendant the plaintiff could recover, whether or not the fence was properly maintained.

9. Same—*when scienter need not be proved—damages.* In an action of trespass for the killing of a mule by the defendant's bull on the plaintiff's premises, it is not necessary to prove *scienter* on

the part of the defendant as to the propensities of the bull, as the unlawful trespass on the land of the plaintiff constitutes the gist of the action and the damages resulting are recovered as an aggravation of the trespass.

Appeal from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Vermilion county; the Hon. Augustus A. Partlow, Judge, presiding.

Jinkins & Jinkins, for appellant.

Acton, Acton & Snyder, for appellee.

Mr. Justice Cartwright delivered the opinion of the court:

This action of trespass was brought by W. C. McKee, appellee, in the circuit court of Vermilion county, to recover damages for the killing of a mule and injury to another mule by the bull of J. E. Trisler, appellant, which broke through the fence dividing the lands of the appellant and the appellee. There was a plea of the general issue and special pleas alleging that the fence was a partition fence, that the part assigned to the plaintiff was defective and insufficient, and that the bull came through that part of the fence. Issues were formed by replications and rejoinders, and upon a trial there was a verdict of guilty and the damages were assessed at $200. Judgment was entered accordingly, and the appellant prosecuted an appeal to the Appellate Court for the Third District, where the judgment was affirmed, and a certificate of importance was allowed and an appeal to this court.

The defendant owned eighty acres of land in Vermilion county and the plaintiff owned fifty-five acres north of and adjoining the eighty acres of the defendant. There was a wire fence on the land between the two tracts, which had

been built by the defendant's father with a machine made
and used for that purpose. At the trial there was no dis-
pute of the fact that the bull came upon the land of the
plaintiff through the wire fence, and there was no evidence
where or at what part of the fence. The defense was that
the fence had been divided between the plaintiff and defend-
ant, and that the bull either went through the part of the
fence assigned to the plaintiff where it was defective, or
through the part assigned to the defendant where it was
good and sufficient. The defendant introduced evidence
that in November, 1919, the fence had been divided, by
agreement, between himself and the plaintiff, plaintiff agree-
ing to take the west half and the defendant the east half.
Plaintiff denied that there had ever been any agreement to
divide the fence or that it was a partition fence. On Sep-
tember 18, 1920, the bull was being pastured with cows and
other stock in the defendant's field south of the line fence,
and evidence for the plaintiff showed that the bull went
out through the east end of the fence, which the defendant
claimed had been assigned to him. There was evidence for
the defendant that the west end of the fence was not in a
good state of repair and had been recently mended with
baling wire. There is some argument for the appellant that
the evidence on these controverted questions of fact proves
his claim, and in the abstract testimony which was particu-
larly favorable to the defendant is printed in italics and in
some cases in capital letters. In reading the abstract it does
not appear that the testimony so printed was of such im-
portance or so remarkable as to justify that method of pre-
senting it to the court. The evidence is only material to
determine what were the controverted questions of fact, and
every such question has been determined by the Appellate
Court and its judgment is not open to review in this court.
The only questions that can be considered are questions
of law.

The plaintiff having proved that the bull had gored the mule which died, a veterinary was called as a witness and testified that when he reached the mule she was lying down with a considerable portion of her entrails out, torn in two, wallowing in the dirt and blood; that she was unable to get up and it was impossible to save her; that death was certain to ensue, and that he gave her a hypodermic injection of chloroform to put her out of her misery. The attorneys for the defendant, concluding that this evidence of the veterinary proved that he killed the mule, moved to strike out his testimony on the ground of variance from the allegations of the declaration. The testimony was in no sense at variance with the allegations of the declaration that the mule died from its injuries.

Other alleged erroneous rulings are, that the court did not permit the defendant to inform the jury that stock had been getting through the west part of the line fence in the fall of 1919, and that was his motive for asking the plaintiff to divide the fence. The evidence was remote and collateral and what caused the defendant to ask for a division is of no importance. The court did not permit witnesses to testify what mules were worth in St. Louis and Chicago, or admit in evidence a drover's journal, or allow cross-examination of a witness as to his knowledge concerning the qualities of the deceased mule. In such a matter as the valuation of a domestic animal like the mule, anyone who has some knowledge of values may give his opinion, but evidence of market quotations or opinions as to the value of mules in distant cities was not competent.

The really material questions of law involved arise from the instructions. The court gave at the instance of the plaintiff the following instruction:

1. "You are instructed that if the plaintiff has proved by the preponderance of all the evidence in this case that he was the owner of the mules in question and that said

mules were on land belonging to plaintiff and that the defendant was the owner of the bull in question and that the said bull was on land belonging to the defendant, which adjoined the land of the plaintiff, and that there was a fence between said lands and that said fence consisted of woven wire and barbed wire and was four and one-half feet high and in good repair, and that said bull broke through said fence and injured one mule and killed one mule belonging to the plaintiff on the land of plaintiff, then under the law you should find a verdict for the plaintiff; and in such state of proof it would be immaterial whether or not said fence was a partition fence by agreement of the parties and it would also be immaterial as to whether or not the plaintiff and defendant had each agreed to keep up a certain portion of said fence, and it would also be immaterial in such state of the proof as to which end of the fence the bull broke through."

On the part of the defendant the court gave the following instruction:

2. "The court instructs the jury that if you believe from a preponderance of the evidence that the plaintiff and defendant were adjoining land owners, that a line or division fence separated their lands, and that certain portions of the fence were to be kept up by each proprietor, then the plaintiff, in order to recover for trespasses, if any, occasioned by the defendant's bull passing through such partition fence, is required to show either that the said bull passed through that portion of the fence which it was the duty of the defendant to maintain and that the said bull passed through defendant's portion at a point where such fence was not good and sufficient to turn stock even to some extent unruly or that the said bull passed through that portion of the fence belonging to the plaintiff, which he was in duty bound to maintain, and that the fence was then and there good and sufficient to turn stock to some extent unruly."

These instructions fairly present the questions of law determining the liability of the defendant. One of them advised the jury that if the fence had been divided and the bull passed through that portion of the fence which it was the duty of the defendant to maintain, the plaintiff, in order to recover, was required to prove that the bull passed through defendant's portion at a place where the fence was not good and sufficient to turn stock even to some extent unruly, while the other told the jury that if the fence complied with the statutory requirements and the bull broke through it they should find a verdict for the plaintiff, and it would be immaterial whether the fence had been divided and as to which end of the fence the bull broke through, making the defendant liable although his fence complied with the statute.

It was the rule of the common law that the owner of domestic animals such as cattle was bound at his peril to keep them off the lands of other persons or respond in damages for their trespasses. No man was bound to fence his close against an adjoining field, but every man was bound to keep his cattle in his own field at his own peril, and it made no difference that he was guilty of no actual negligence in not properly guarding them or that they escaped against his will and without such negligence. (*McCormick* v. *Tate,* 20 Ill. 334; *D'Arcy* v. *Miller,* 86 id. 102.) From the earliest history of the State the statute has declared that the common law shall be the rule of decision where applicable and of a general nature. In *Seeley* v. *Peters,* 5 Gilm. 130, the court, admitting the rule of the common law to be that the owner of a close was not bound to fence against the adjoining close, held that the common law was not the rule of decision because not applicable to the habits and conditions existing in this State. The basis of that decision was that the custom had been from the earliest times for the owners of stock to suffer them to run at large and pasture them on uninclosed ground. The rule of law

established was that every owner of land must protect the same against cattle, and that was the law until the act of 1871-72, re-written in 1874, which prohibited domestic animals from running at large, with a provision for local option on the subject. The act of 1895 eliminated the local option provision by section 1, which is as follows: "That hereafter it shall be unlawful for any animal of the species of horse, ass, mule, cattle, sheep, goat, swine or geese to run at large in the State of Illinois." (Laws of 1895, p. 4.) This act removed the last vestige of any impediment or opposition to the statute making the common law the rule of decision in this State. The effect was to restore the common law, and it required the owner of domestic animals to keep them off the lands of other persons and to make him liable for their trespasses. (*Bulpit* v. *Matthews,* 145 Ill. 345.) That rule applied to the owners of adjoining lands. In *Buckmaster* v. *Cool,* 12 Ill. 74, several persons raised crops in a common field and during the season one of them erected an inside fence sufficient to protect the crops. In November a servant of the defendant removed a portion of the inner fence, by which stock entered the field and destroyed the corn, and the plaintiff recovered damages for such removal. In *McCormick* v. *Tate,* *supra,* the court considered the decision in *Buckmaster* v. *Cool* as limiting the decision in *Seeley* v. *Peters* to stock running at large and leaving the common law in force as to inside fences, unless regulated by the statute regarding partition fences. The decision in *Buckmaster* v. *Cool* was adhered to and the common law was repeated as applicable to owners of adjoining fields unless changed by the statute regulating partition fences.

The statute regulating the duty of adjoining land owners respecting fences, provides that when two or more persons shall have lands adjoining, each of them shall make and maintain a just proportion of the division fence be-

tween them, and section 20 provides that "if any horse, mule or ass, or any neat cattle, hogs or sheep, or other domestic animals, shall break into any person's inclosure, the fence being good and sufficient, the owner of such animal or animals shall be liable, in an action of trespass, to make good all damages to the owner or occupier of the inclosure." The statute established a duty that each owner of adjoining lands shall make and maintain a just proportion of the division fence, and that being his duty, an adjoining owner is relieved from his common law liability as to that part of the fence where the duty is cast upon the other. For the evident purpose of fixing a definite rule for determining what shall be a compliance with the statutory duty to fence against stock of the adjoining owner, the Fence law makes this provision: "Fences four and one-half feet high, and in good repair, consisting of rails, timber boards, stone, hedges, barb wire, woven wire or whatever the fence viewers of the town or precinct where the same shall lie shall consider equivalent thereto suitable and sufficient to prevent cattle, horses, sheep, hogs and other stock from getting on the adjoining lands of another, shall be deemed legal and sufficient fences." This statute by its language has no relation to outside fences but is applicable only between the owners of adjoining lands, and it is still the law that no one is bound to protect his land against animals unlawfully at large. Construing these several acts together, a line fence may be divided between adjoining lands and each owner assume the duty of making and maintaining the proportion of the fence allotted to him, and for that purpose fences complying with the statutory provision shall be deemed a compliance with his duty as against the other, and if domestic animals break into the inclosure of one who has performed his statutory duty the owner is liable in trespass to make good the damages. The statutes do not purport to relieve an owner of land of his common law duty to keep his stock on his own

land except as to the portion of the fence assigned to the owner of the adjoining land, which such owner must make and maintain of the height and materials specified in the statute. Neither the plaintiff nor the defendant was relieved of his common law duty to keep his stock on his own land except as such duty was cast upon the other. If the line fence had been divided, the plaintiff had assumed the duty of keeping the part assigned to him as required by the statute, and before he could recover damages he would be required to prove that the defendant's bull came through that part of the division fence which he was bound to maintain when in the condition required by the statute, or that the bull came through that part of the partition fence belonging to the defendant. Before the division of the line fence, if there was one, the common law, which controlled the rights and duties of the parties, imposed upon the defendant the duty to keep his stock on his own land or answer in damages for their trespasses, and it would not readily be supposed that the legislature, by requiring the plaintiff to maintain a just proportion of that fence, intended that the defendant should be relieved of that duty except as to any portion which might be assigned to the plaintiff and as to which the plaintiff would assume the same duty. It is plain that the legislature intended to separate the duties, liabilities and obligations of the common law by a division and that neither owner should recover against the other damages resulting from a failure to perform his duty, but it will not be assumed that the legislature intended to invite and promote litigation concerning the liability of either by substituting questions as to the condition of the fence of either as a protection to the adjoining land against his own stock, for a clear, definite, well established and easily enforced rule of the common law. Where owners of adjoining lands jointly build, own or maintain the division fence, as is quite common, any other rule would

permit gross injustice. One owner having his land in crops would be at the mercy of the other pasturing his land and might have his crops destroyed without redress, because the other could say the damage was due to neglect of the injured owner to keep the fence in repair. In the various cases that have come before this court the dispute has been whether the stock came through that portion of the fence which the plaintiff was bound to maintain and which was claimed to be defective, and in each case it was held that he could not recover if the damages suffered resulted from his own neglect of duty, but none of those decisions have determined the question presented in this case.

The statement in the instruction given for the defendant that if the bull came through the defendant's portion of the division fence the plaintiff was bound to prove that it came through at a point where the fence was not good and sufficient to turn stock even to some extent unruly was not a correct statement of the law for the reasons already given. In fact it did not state the rule now contended for, because it required the defendant to maintain a fence sufficient to turn stock even to some extent unruly, while the statute does not contain that requirement. It was also objectionable because it furnished no rule for the jury. To require a fence that would turn stock to some extent unruly, a little unruly or perhaps somewhat unruly, fixed no standard and would simply tend to confuse the jury. The instruction given for the plaintiff that if the defendant's bull came through a part of the fence that was assigned to him plaintiff could recover stated the law, because that was his common law duty, not changed as to the part of the fence retained by him on the division, if there was any division.

There was a motion to direct a verdict for the defendant, and it is argued that the court erred in denying the motion because there was no evidence that the defendant had any knowledge that the bull was accustomed to commit in-

juries. The defendant knew that he owned the bull and was keeping him in his field and was chargeable with knowledge of the propensities of bulls and their habits. It was not necessary, however, to prove *scienter*. The gist of the action was a trespass in breaking into and entering the plaintiff's close, and in such a case the damages resulting are recovered as an aggravation of the trespass. The necessity of *scienter* is only in cases where an animal was in a place where it had a right to be, and if the bull was unlawfully trespassing on the land of plaintiff the nature and extent of the damages are to be determined from the injury done. 1 Addison on Torts, 381; Cooley on Torts, 340; *Sexton* v. *Baker*, 31 Vt. 540; 1 Thompson on Negligence, secs. 842, 875; 1 R. C. L. 1092; 1 Corpus Juris, 94.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*