## UNION STOCKYARDS v. PEELER.
### No. 1435—5645.

Commission of Appeals of Texas, Section A.
April 1, 1931.

Terrell, Davis, McMillan & Hall, of San Antonio, for plaintiff in error.

Perry J. Lewis, H. C. Carter, Champe G. Carter, and Randolph L. Carter, all of San Antonio, for defendant in error.

CRITZ, J.

This is a suit for damages on account of personal injuries filed by Travis L. Peeler, whom we will hereinafter designate as plaintiff, against Union Stockyards, a corporation, whom we will hereinafter designate as defendant. The suit was filed in the district court of Bexar county. Trial in the district court before the court without the intervention of a jury resulted in a judgment for the plaintiff for $5,000. The defendant appealed to the Court of Civil Appeals at San Antonio, which court affirmed the judgment of the trial court. 21 S.W.(2d) 1076. The case is in the Supreme Court on writ of error granted on application of the defendant.

Omitting immaterial parts, Peeler's petition in the trial court reads as follows:

"Plaintiff avers that the defendant, Union Stock Yards, maintains in the City of San Antonio certain pens and stock yards for the

handling of stock, and on or about April 13, 1928, the plaintiff was lawfully in said stock yards, assisting in the handling of some cattle, and under the circumstances it was the defendant's duty to exercise care to see that the pens and gates were in safe and secure condition. Notwithstanding this, the defendant negligently caused and permitted one of the gates and the latch thereof, which defendant maintained in said stock yards, to be in a defective, insecure and unsafe condition, and, by reason of defendant's negligence, the latch of said gate broke when one of the cattle came in contact with it and thereby the plaintiff was thrown, and because of defendant's negligence plaintiff sustained serious and permanent personal injuries as hereinafter described.

"Plaintiff avers that the defendant negligently caused and permitted said gate to be in a defective and insecure condition.

"The defendant also negligently caused and permitted the latch of said gate to be in a defective, insecure and unsafe condition so that it broke when one of the cattle came in contact with the gate.

"Plaintiff also avers that the defendant negligently caused and permitted the latch of said gate to become old, worn and weak.

"Plaintiff avers that each of said acts of negligence was a separate act of negligence and each directly caused and contributed to the plaintiff's injuries. The facts and circumstances are peculiarly within the possession of the defendant and plaintiff cannot set out defendant's negligence more specifically than he has done herein.

"By reason of the defendant's negligence, the plaintiff was thrown and because thereof one of the cattle stepped upon his leg and injured and broke it."

The plaintiff testified in substance that he and John L. Rothe were moving cattle from one cattle pen to another; that he (plaintiff) was opening and closing the gates; that before he got away from the gate where the accident happened a wild and excited steer brushed against him, hit the gate, and broke the gate latch, thus causing the gate to swing open; that he had hold of the gate at the time and was jerked down, causing the feet to drag the ground and the steer stepped upon his leg and broke it; that if the latch on the gate had not broken, and the gate had not come open, he would not have been thrown; that when the accident happened he had already latched the gate; that he had reached back and was holding the gate at the time the latch broke; that about six inches of the gate latch broke off; and that the latch was an old piece of timber and was worn and loose.

John L. Rothe, a witness for Peeler, testified:

"I am in the live stock commission business with an office in the exchange building at the Union Stock Yards. On the day in question the plaintiff and I were moving cattle in the alley. Plaintiff was east of the cattle and I had walked into the bunch and one steer ran out. When the steer came in contact with the gate the slat broke and the gate flew open. When the gate opened Mr. Peeler fell to the ground and the steer jumped on him. Then the steer ran down the alley. The slat breaking and the gate giving away was what caused the plaintiff to fall and it was when he fell that his leg got into the position where the steer stepped on it. The latch seemed to be in a very weak condition due to constant use for a number of years and seemed to be worn down. The gate in question was closed across the alley and Peeler walked towards the gate for the purpose of opening it and when he saw the steer coming he just turned around and put out his hands toward the steer. He was in the situation where he was protecting himself from that steer. The steer struck him and the slat broke and Mr. Peeler went down on the ground and the steer jumped on him. Mr. Peeler hadn't gotten to the gate for the purpose of opening it as yet. He and the steer got there about the same time but he turned when the steer was upon him and put out his hands like this and wheeled around and the steer struck him. I don't know just where but pushed him against this gate and the slat broke and he went down and the steer jumped on him. These cattle were wild. As to whether their wildness was what brought this accident about, the steer striking him was what caused this accident; running against this gate and the thing breaking is what caused the damage. The steer was absolutely wild. When Mr. Peeler closed that alley and if these were wild steers, and as to why he didn't get on the other side, I don't think he was compelled to get on the other side. He didn't expect this steer to run out there."

It seems that the defendant offered no testimony as to how the accident happened, and the above is all of the testimony on this subject. It is not questioned that the stockyards in question belonged to and were being operated by the defendant. We also assume, for the purpose of this opinion, that plaintiff was an invitee in the yards at the time he received his injuries. From the statement we have made it is evident that the plaintiff's cause of action is based upon the theory that the latch to the gate in question was defective, and that as a proximate result thereof he received the injuries here complained of. In this connection we assume that the latch was defective, and that such defective condition was due to the negligence of the defendant.

The defendant pleaded a general demurrer

and certain special exceptions, also a general denial. Also the defendant pleaded that the injury to the plaintiff was caused by the happening of an unexpected and unforeseen contingency, which could not have been foreseen by the exercise of ordinary care or foresight, and, that, accordingly, the act of negligence complained of was not the proximate cause of the plaintiff's injuries. The defendant also pleaded certain other matters not germane to this opinion.

■ The defendant, by various assignments of error, contends that both the pleadings and the evidence, considered in their most favorable light on behalf of the plaintiff, show, as a matter of law, that the negligence of the defendant in maintaining a defective gate or gate latch was not the direct and proximate cause of the plaintiff's injuries. We sustain this contention. Texas & Pac. Ry. Co. v. Bigham, 90 Tex. 223, 38 S. W. 162, 164.

■ The ordinary layman understands the term "proximate cause" to mean the nearest cause, but such is not the legal meaning of the term. In law an event may be the proximate cause, though it is not the nearest cause, and conversely an event may be the nearest cause in point of time, and not in law, the proximate cause. It is sufficient in law for an event to be proximate cause of an injury, if the injury is the natural and probable result of the act of negligence, either by commission or omission. It is further a rule of law as applied to negligence that a party will not be held responsible for the consequences of an act which ought not reasonably have been foreseen. In other words, in order to warrant a finding that an injury is the proximate result of an act of negligence, either by commission or omission, it must appear that the injury was the natural and probable consequence of the negligent act complained of, and that the party committing the negligent act ought to have foreseen such consequences in the light of attending circumstances. All the above rules are laid down and exhaustively discussed by Chief Justice Gaines in the Bigham Case, supra.

When we test this case by the above rule, and by the rules of law announced in the Bigham Case, we find that the pleadings and the evidence absolutely fail to establish the fact that plaintiff's injuries were the proximate result of the negligence of the defendant in maintaining the defective gate or gate latch. In fact, the similarity of the facts and circumstances of this case, and the Bigham Case, is such as to be very remarkable. Furthermore, the facts of this case are so similar to the facts of the Bigham Case that there is no escape from the conclusion that if the facts in the Bigham Case fail to raise an issue of proximate cause, the facts of this case also fail to raise such issue.

An examination of the opinion and the original record in the Bigham Case shows that Bigham had made arrangements with the railroad company for the shipment of his cattle from Merkel to Waxahachie, both points in Texas, that he had penned his cattle in the stock pens of the railroad; that the gate to the entrance of such pens was out of repair, and its appliance for fastening defective; that these conditions were known to the railroad; that the defective condition of the gate, and its appliance was due to the negligence of the railroad; that Bigham was an invitee of the railroad at the time of his injury; that in order to prevent the escape of his cattle Bigham was in the act of fastening the gate by means of a rope when the noise of a passing train so frightened the cattle as to reduce them to a condition of panic, and they plunged towards and upon the gate, one on top of the other, and before Bigham could escape hurled him to the ground some 20 feet away, where he fell unconscious, and was badly injured; and but for the act of negligence on the part of the railroad in permitting the gate to remain in a defective condition the cattle would not have escaped, and he would not have been injured.

In the instant case it is shown that plaintiff was lawfully assisting one Rothe in moving some cattle from one pen to another; that in doing so, he (plaintiff) was opening and closing the gates to the pen; that while he was performing the above acts a wild and excited steer brushed against the gate, broke the latch, and caused the gate to fly open; that Peeler had hold of the gate at the time, and was jerked down thereby, and his feet caused to drag the ground, and the steer stepped on his leg and broke it, and otherwise injured him; that if the latch had not broken the gate would not have come open, and he would not have been thrown in the prone position, and would not have been injured; and that the defendant was guilty of negligence in maintaining the gate with a weak and defective latch.

In applying the law of proximate cause to the facts in the Bigham Case, Judge Gaines says:

"Ought the agents of the company to have foreseen that, as a result of the imperfect fastening of the gate, the injury, or any injuries similar in character, would probably result? In our opinion, nothing short of prophetic ken could have anticipated the happening of the combination of events which resulted in the injury of the person of the plaintiff. The act of the defendant in permitting the fastening to its gate to become insecure was in itself lawful; and, since it was clearly out of the range of reasonable proba-

bility that an injury to the person of any one should result, it should be held, as a matter of law, that the negligence of the company gave no right of action for such injuries."

When we come to apply the law of proximate cause to the instant case, we can but say the same as was said by Judge Gaines in the Bigham Case. Ought the agents of the defendant to have foreseen that as a result of the defective condition of the fastening to the instant gate the injuries to the plaintiff would result, or would such company be expected to foresee that as a natural and probable consequence of its failure to keep the gate fastening in good condition the injuries complained of, or that any injuries similar in character would result? In our opinion no person could reasonably be presumed to have anticipated the combination of events which resulted in the injury to the person of the plaintiff. The negligent act of the defendant in permitting the fastening to its gate to become unsafe and defective was in itself lawful, and since it was clearly out of range and probability that an injury to the person of any one would result thereby, it should be held as a matter of law that such negligence gave no right of action for the personal injuries here complained of.

The opinion of the Court of Civil Appeals attempts to distinguish the instant case from the Bigham Case as follows:

"The case of T. & P. Ry. Co. v. Bigham, 90 Tex. 223, 38 S. W. 162, is presented and urged as authority against appellee's contention. The Bigham Case is easily distinguishable from the instant case. It had nothing to do with the injury that in this case was caused by a defective latch. In the Bigham Case the breaking of the gate did not of itself have any connection or causal relation with the plaintiff's injury—it merely let the cattle out, which 'hauled him some twenty feet.'

"Here plaintiff was actually holding to the defective gate, and, when 'the latch broke, being itself defective, pulled the plaintiff down, and threw him under the foot of the steer, and dragged him in the path of the steer. This is not a case where animals escaped, but a case wherein there was a defect in the latch which caused the injury. In the Bigham Case the defective latch merely let the cattle escape, but here the defect in the gate itself pulled the plaintiff down and threw him under the feet of the steer. The direct causal connection between the defective latch and gate and the injury is apparent and definitely shown."

An examination of the original statement of facts in the Bigham Case shows that Big-

ham testified, among other things, as follows:

"I put them (the cattle) in defendant's stock pens ready to be shipped. The latch which went from the gate into the morticed groove in the gate post was broken. I called to one of my men to give me a rope with which to fasten the gate. One of them gave me a half inch rope. I had put it once around the gate post and the fence post and was trying to pass it around again when an engine passed on the defendant's track just north of the pen and frightened the cattle; that suddenly, and while I had my arms around the post trying to tie the rope around again they ran with great force and violence into the gate. They broke the rope and drove the gate against me. I fell senseless about twenty feet from the gate post where I was trying to hold the cattle."

A reading of Bigham's testimony above quoted, together with the statement we have made of that case, discloses that the distinction drawn between the Bigham Case and the instant case by the Court of Civil Appeals is not justified by the records of the two cases.

It appearing that the facts of this case have been fully developed, and that no purpose can be served by a remand, we recommend that the judgments of the Court of Civil Appeals, and of the district court, be both reversed, and judgment here rendered for the plaintiff in error.

CURETON, C. J.

The judgments of the district court and Court of Civil Appeals are both reversed, and judgment rendered for the plaintiff in error, as recommended by the Commission of Appeals.