**ZUNIGA et ux. v. STOREY et al.**

No. 12197.

Court of Civil Appeals of Texas.
San Antonio.
April 4, 1951.

Rehearing Denied May 2, 1951.

G. Woodson Morris, Albert U. Trevino, San Antonio, for appellants.

James V. Graves, Joe Burkett, San Antonio, for appellees.

NORVELL, Justice.

This is an appeal from a judgment rendered upon an instructed jury verdict in favor of the defendants, H. D. Storey and T. Brooks Woods, who were operating and conducting a rodeo performance at a "Sports Arena" located in Brackenridge Park in San Antonio, Texas. On July 18, 1944, a Brahman bull, named Hitler, escaped from the arena or stock pens maintained by defendants and ran loose upon the streets of San Antonio until he entered a yard adjoining the residence of Jesus Gallegos at 448 Terry Court. Gregorio Zuniga and his wife, Eduvijes Zuniga, the plaintiffs below and appellants here, were visiting Mrs. Gallegos at the time. Mrs. Zuniga was in the yard when the bull attacked her and inflicted serious bodily injuries.

On an appeal from a judgment based upon a peremptory instruction, the evidence must be viewed in the light most favorable to the party against whom the verdict was directed. Under this rule, it is clear that the evidence was sufficient to support a finding of negligence against defendants in allowing the bull to escape from the arena and pens or in failing to capture or kill the bull within a reasonable time after he had gained his freedom. While the operators of rodeos and wild west shows are not liable as insurers, they are obligated to use reasonable care in keeping their show animals securely penned and housed so that they will not get loose upon the public streets in a metropolitan area.

There is conflict in the testimony as to how the bull effected his escape. Appellee Storey testified that the animal got loose during the "grand entrance" of the evening show and while the rodeo performers were entering the arena. According to other witnesses, four or five cowboys, employed by appellees, were attempting to get the bull into a chute in the north end of the arena prior to the performance when the bull turned and charged them, then ran to a partially open gate which an attendant failed to close in time to prevent the animal's escape. The bull went out this gate, burst through another barrier in an alley-way outside the walls of the arena and made his way into the open.

The primary proposition urged in appellees' brief is that the instructed verdict was proper for the reason that there was no showing that the actions of appellees' servants in allowing the bull to escape was a proximate cause of the injuries sustained by Mrs. Zuniga. It is asserted that such injuries or results similar thereto could not be reasonably foreseen. It is also contended that the evidence affords no basis for a finding of negligence.

In support of their contentions, appellees cite Texas & Pacific Ry. Co. v. Bigham, 90 Tex. 223, 38 S.W. 162; Union Stock Yards v. Peeler, Tex.Com.App., 37 S.W.2d 126; Carson v. Knight, Tex.Com.App., 294 S.W. 539.

The Bigham case was one in which cattle stampeded through a defective gate and over the plaintiff upon hearing an approaching freight train. It resulted in injuries to the cattle as well as to the owner who was standing near the gate. Chief Justice Gaines achieved an interesting result in that case by holding that the defendant had the duty to confine the cattle and should have foreseen their escape by reason of the defective latch, but, notwithstanding this duty regarding livestock, stated that nothing short of "prophetic ken" could have anticipated the sequence of events resulting in the injury to the plaintiff's person. The court thereby held that the defendant should anticipate that the cattle upon hearing a freight train, would run out the gate, but could not foresee that they would run over a person standing in the gate. The court granted damages for injuries to the cattle by reason of the active cause which produced their injury. It was seemingly the same cause which produced the injury to the cattle and the person, yet, in the case of the damages to the person, the court held that, "The active cause which produced the injury was wholly independent of the negligence of the defendant, and wholly disconnected from it." 90 Tex. 223, 38 S.W. 164. The exact basis for this distinction between injury to the cattle and to the person is not entirely clear, as is pointed out by Prof. Leon Green in his discussion of Proximate Cause in Texas Negligence Law, 28 Tex.Law Review 629.

Union Stock Yards v. Peeler, Tex.Com. App., 37 S.W.2d 126, also involves a defective gate and follows the holding of the Bigham case.

In Carson v. Knight, Tex.Com.App., 294 S.W. 539, the sole alleged act of negligence considered by the Commission of Appeals was the attempt of an employee of Carson, the plaintiff in error, to "bulldog" a large calf which had escaped while being transported by the employees of plaintiff in error who was engaged in the transfer business. The Commission of Appeals held that the employee was not negligent in attempting to "bulldog" the calf after it had escaped even though the attempt was unsuccessful. This case deals primarily with the issue of negligence, rather than with the element of foreseeability which is included within the definition of proximate cause.

In our opinion, none of the cases cited is in point. Mrs. Zuniga's injuries did not result from a combination of causes similar to those mentioned in the cases relied upon by appellees. Other than the fact that a member of the bovine species is involved here, there is no similarity between this case and those cited by appellees. Obviously, this is not a case of cattle becoming frightened by some unforeseen event and breaking through a defective barrier, nor is it a case where an unsuccessful attempt was made to bring an animal under control by "bulldogging." The issue here is whether or not the evidence was sufficient to have supported a jury finding that appellees failed to discharge their duty to protect the public from an animal they were

using for show purposes. Whichever version of the testimony be accepted, it appears that the bull made his escape while under the immediate control of appellees' servants. Said servants failed to capture or restrain the animal until after he had run wild through the streets of San Antonio and inflicted serious bodily injury upon Mrs. Zuniga, who was two miles away from the place where the bull made his escape. From the evidence a jury could have properly concluded that appellees and their servants were negligent.

■ In our opinion the question of foreseeability embraced in the issue of proximate cause was likewise for the jury. It is urged that appellants "failed to prove that the bull was of a vicious and dangerous character." We are directed to the testimony of the appellee Storey where he stated that a Brahman bull usually wants to get away from people and ordinarily is not as vicious as a Jersey or Hereford bull, and that this particular bull had not prior to the occasion involved displayed a ferocious disposition. It may be that a Brahman bull in his natural surroundings is a comparative inoffensive creature. In his native India, he is regarded as a sacred animal, but on July 14, 1944, this particular bull, "Hitler," much against his will, was acting as a performer in a wild west show and rodeo. He was not being subjected to the treatment ordinarily accorded to domestic animals and we think a distinction may well be made between Blackie, the yard dog and Elsie, the milch cow, on the one hand, and Hitler, the sorely beset and tormented bull, upon the other hand. Animals subjected to the treatment they receive in rodeo shows become frightened, infuriated and hence dangerous, and appellees are charged with knowledge of this fact. If we accept the version of appellants' witnesses, as we are required to do upon this appeal, it appears that appellees' servants had actual knowledge of the animal's dangerous propensities immediately prior to the time he made his escape. The bull had engaged the efforts of five rodeo cowboys who unsuccessfully tried to drive him into a pen, where all the other bulls had gone without difficulty. The bull at that time could not escape because he was confined and the gate was closed. With the gate securely closed, the bull fought, hooked and charged the cowboys. Because of this behavior, additional cowboys came upon the scene to help drive the unruly bull into the pen. While the bull was "charging at them and kept coming down the center of the ring, and kept getting back to the gate," one cowboy opened the gate to admit another cowboy. One witness stated that the bull made a dash at a cowboy standing at the gate and while other cowboys were coming through the gate the bull struck the gate and went on out. Another witness said that when the bull ran towards the gate, the man watching it, "just let the gate go." These things transpired at a time when other gates leading outside the arena were wide open.

■ We have here a bull on public exhibition and its intractable nature was known to the exhibitors. Immediately before its escape it was securely confined, and was then permitted to escape by the opening of a gate at a time when other gates leading outside were also open. Whatever may have been the natural disposition of the bull or the record of his ancestry, we feel reasonably safe in saying that a jury could properly find that appellees knew or should have known that the bull, prior to his escape, was dangerous and that it should have been reasonably foreseen that injury and harm would result from his being allowed to escape from the rodeo arena and run charging through the streets.

Issues of negligence and proximate cause were raised by the evidence and should have been submitted to the jury. Collins v. Pecos & N. T. Ry. Co., 110 Tex. 577, 212 S.W. 277, 222 S.W. 156; San Antonio & A. P. Ry. v. Behne, Tex.Com.App., 231 S.W. 354; Carey v. Pure Distributing Corp., 133 Tex. 31, 124 S.W.2d 847; Missouri, Kansas, Texas R. Co. of Texas v. McLain, 133 Tex. 484, 126 S.W.2d 474; Sullivan v. Flores, 134 Tex. 55, 132 S.W.2d 110.

For the errors pointed out, the judgment of the trial court is reversed and the cause remanded for another trial.

W. O. MURRAY, Chief Justice (dissenting).

I am unable to agree with the opinion of the majority and therefore respectfully enter my dissent.

The evidence as I view it fails to show that appellees or their employees were guilty of negligence which enabled the Brahman bull "Hitler" to escape from the Sports Arena in Brackenridge Park.

The evidence fails to show that this bull was known to appellees to be a vicious and dangerous animal. The fact that he proved to be vicious on the occasion in question does not establish the fact that appellees had prior knowledge of his vicious propensities. The undisputed evidence is that as a general rule Brahman bulls try to get away from people rather than to attack them and that appellees had no knowledge that Hitler was different from other Brahman bulls.

We find the rule stated in 2 Am.Jur. p. 728, § 48, as follows:

"In General.—The owner of an animal not naturally vicious is not answerable for an injury done by it when in a place where it had a right to be, unless it was, in fact and to his knowledge, vicious. If, being theretofore of a peaceable disposition, it suddenly and unexpectedly, while in the charge of its owner or his servants, inflicts injury on another, neither, if at that time due care was exercised, is answerable. But if one knowingly keeps a vicious or dangerous animal, which is accustomed to attack and injure mankind, the rule usually stated is that he is prima facie liable for injuries done by it, without proof of negligence as to the manner of keeping it. The negligence on which the liability is founded is keeping such an animal with knowledge of its propensities. The gist of the action is keeping the animal with knowledge of its vicious disposition. When an animal of a species not naturally dangerous to mankind has been found by its owner to possess a vicious or dangerous disposition, it passes into the class of animals which the owner keeps at his peril. As respects the liability of the owner, there is no distinction between the case of an animal which breaks through the tameness of its nature and is fierce, and is known by its owners to be so, and one which is ferae naturae.

"It is sufficient if the owner has seen or heard enough to convince a man of ordinary prudence of the animal's inclination to commit the class of injuries complained of. The question in each case is whether the notice was sufficient to put the owner on his guard and to require him, as an ordinarily prudent man, to anticipate the injury which has actually occurred. It is not essential, in order to fasten liability on the owner, that he have notice of a previous injury to others if he knew, or ought to have known, that the animal had dangerous propensities. In other words, the owner of an animal of a species which is ordinarily harmless is not liable for an injury done by it to a person unless the animal was accustomed to injuring persons or had an inclination to do so to the knowledge of the owner. The owner of a domestic animal may be chargeable with notice of its viciousness through his neglect to take notice of its vicious habits. It has been stated, however, that it is not enough to charge the owner of a dog that he might have known of the vicious or mischievous propensities of the dog by the exercise of reasonable care.

"If the owner of a domestic animal has notice of its propensity to commit the class of injuries complained of, it is immaterial that the animal was not cross or savage but acted in good nature and playfulness, as the intent of the animal is not material where its attentions are hurtful.

"While the ancient rule as generally found stated is that the gist of an action for injuries inflicted by a ferocious animal is keeping it with knowledge of its vicious propensities, negligence or the want of negligence being deemed immaterial, to some courts a more accurate statement of the true principle governing the owner's legal responsibility seems to be that the gist of the action is the failure to keep such animal securely, it being said that there is no liability for securely keeping a ferocious animal with knowledge of its vicious disposition. There is also some authority

to the effect that there is no liability for an injury by an animal of known viciousness unless there is negligence or want of reasonable care in so keeping the animal as to prevent its doing injury, and that the liability of an owner for injuries committed by an animal known to be vicious is prima facie only, not absolute, and may be avoided by showing diligence in restraining the animal commensurate with its known propensities."

This not being a case in which a known vicious and dangerous animal was being kept by its owners, a recovery can be had only upon a proof of negligence on the part of the owners which was the proximate cause of the injuries and damages complained of by appellants. I do not find that one single act of negligence on the part of appellees or their agents was established by the evidence. The nearest approach to a showing of negligence is that the man guarding the gate at the south end of the arena abandoned his post and climbed the fence when the bull charged the gate and thereby permitted the bull to escape from the arena. There is no evidence indicating that a man of ordinary prudence would have done anything differently from what this man did. It would seem that had he acted otherwise he would probably have lost his life. There is nothing to show that it was negligence for the man guarding the gate to open it for the purpose of permitting additional cowboys to come into the arena to help subdue the bull. Apparently the entire trouble resulted from the fact that the bull suddenly and unexpectedly charged the gate in such a manner as not to give the gateman time to close the gate but forced him to flee for his own safety. There is no evidence here that there was any defect of any kind in any of the pens, chutes, fences or gates used in connection with the Rodeo.

Likewise, there is no evidence that there were an insufficient number of cowboys who attempted to recapture the bull after he escaped, or that they were lacking in skill and ability to do so. The only evidence is that when they roped at the bull they missed. This does not in itself show negligence.

The burden was upon the appellants to introduce evidence sufficient to show that appellees were guilty of negligence in allowing the bull to escape from the arena or that they were negligent in not sooner capturing or killing the bull, which burden appellants, in my opinion, have not discharged.

If appellees were not guilty of negligence in allowing a bull of known vicious propensities to escape, then the only other possible theory upon which appellants could recover would be that appellees permitted the bull to run at large in violation of law. We have no general statute in this State prohibiting owners from allowing their livestock to run at large. The only such laws are local option laws of which courts do not take judicial notice. Hill v. State, 58 Cr.R. 79, 124 S.W. 940; McCormick and Ray of Texas Law of Evidence, § 83, p. 138. A party who is relying on a local option statute must allege and prove that the necessary steps have been taken to put such laws in effect in the territory where the injury or trespass is alleged to have occurred. Here there is no allegation or proof of a local stock law so we must presume none was in effect.

Section 14 of Article 1015, Vernon's Ann. Civ.Stats., empowers a city to adopt an ordinance "To prevent, regulate and control the driving of cattle, horses and other animals into or through the city." There was no allegation or proof that the City of San Antonio has ever enacted such an ordinance, and we cannot presume that it has. Courts do not take judicial notice of city ordinances. Wigmore on Evidence, § 2572, p. 552; Jones on Evidence, § 116, p. 200.

So far as this record shows it is not unlawful for an owner to permit his cattle to run at large in the City of San Antonio.

We do have a general statute, Art. 1370a, Vernon's Ann.P.C., which makes it unlawful for an owner to permit his livestock to run at large, unattended upon any designated highway of this State that is fenced on both sides. There is no contention here that the injury complained of occurred upon a designated highway of this State fenced upon both sides.

There is no evidence here that this bull was unlawfully running at large, even though the evidence had shown that he was purposely turned out to go where he pleased. The only possible grounds of recovery would be that appellees, with knowledge that this bull was likely to attack mankind if permitted to run at large, did not use ordinary care to prevent his escape. The evidence does not establish this want of care and therefore in my opinion the trial court properly instructed a verdict for appellees.

I have not found any cases in this State or elsewhere directly in point. However, I have found some cases in other jurisdictions that are enlightening. The case of McKee v. Trisler, 311 Ill. 536, 143 N.E. 69, 72, 33 A.L.R. 1298, is a case where the owner of a bull was sued for the loss of a mule gored to death by the bull. In Illinois the stock law is just the opposite of the law in Texas, in that the owner is required to fence his stock in and other landowners are not required to fence stock out. The bull escaped from his owner and went upon the premises of the plaintiff and there gored his mule to death. There the Court said: "There was a motion to direct a verdict for the defendant, and it is argued that the court erred in denying the motion, because there was no evidence that the defendant had any knowledge that the bull was accustomed to commit injuries. The defendant knew that he owned the bull, and was keeping him in his field, and was chargeable with knowledge of the propensities of bulls and their habits. It was not necessary, however, to prove scienter. The gist of the action was a trespass in breaking into and entering the plaintiff's close, and in such a case the damages resulting are recovered as an aggravation of the trespass. The necessity of scienter is only in cases where an animal was in a place where it had a right to be, and, if the bull was unlawfully trespassing on the land of plaintiff, the nature and extent of the damages are to be determined from the injury done. 1 Addison on Torts, 381; Cooley on Torts, 340; Saxton v. Bacon, 31 Vt. 540; 1 Thompson on Negligence, §§ 842, 875; 1 R.C.L. 1092; 1 Corpus Juris, 94."

It is clear to my mind that if the law in Illinois had been the same as it is in Texas the instructed verdict would have been given.

Another interesting case is that of Walker v. Nickerson, 291 Mass. 522, 197 N.E. 451. In that case a cow escaped from the defendant's land, strayed upon the plaintiff's land and while there "butted" the plaintiff and knocked her to the ground. The stock law of Massachusetts requires an owner to fence his cattle in and in that respect is different from the law of Texas. The court held that the cow was a trespasser upon plaintiff's land, or she escaped through a defective fence. The court further found that plaintiff did not have to prove scienter because of the duty of the defendant to keep his cattle on his own premises at his peril.

Another interesting case is that of Fraser v. Chapman 256 Mass. 1, 152 N.E. 44, wherein the owner of a ram, known to him to be vicious, permitted it to escape from his premises and onto the premises of another. The plaintiff, a lady, attempted to drive the ram out of a strawberry patch and was bunted by it and seriously injured. It was unlawful to permit rams to run at large at the time and place where the injuries occurred. The court held that defendant having failed to keep securely on his own premises a ram, known to be likely to attack mankind, was responsible for the damage irrespective of any negligence on his part. Some states do not go this far. Even though a defendant is keeping a domestic animal with knowledge of its vicious propensities, according to some decisions he is not liable for damages which it may cause if it escaped without fault on his part. 3 C.J.S., Animals, § 146, p. 1247.