In re ANDERSON & KENYON
PARTNERSHIP, Debtor.

Bankruptcy No. 89–80574.

United States Bankruptcy Court,
C.D. Illinois.

March 25, 1994.

Gregg N. Grimsley, Vonachen, Lawless,
Trager & Slevin, Peoria, IL, for debtor.

J. Brian Heller, Washington, IL, for creditors.

## OPINION

WILLIAM V. ALTENBERGER, Chief
Judge.

The Creditors and the Debtor are adjoining landowners. The Creditors use their land to raise crops and cattle and the Debtor uses its land to raise cattle. In the mid 1970's, the Debtor, desiring a border fence between the adjoining lands, requested that the Creditors erect a portion of the border fence. The Creditors and the Debtor agreed the border fence was to be divided into forty rod intervals with the· responsibility for erecting and maintaining the fence to be divided between them at each forty rod interval. The Creditors erected their portion of the border fence. The Debtor never erected its portion of the border fence. There was no written agreement between the Creditors and the Debtor for the border fence. There were no further discussions concerning the status of Debtor's efforts to erect the other portion of the border fence or the condition of the portion of the border fence erected by the Creditors. The portion erected by the Creditors just existed and began to deteriorate due to weather, non attention, etc.

In 1987, 1988, 1989 and 1991, Debtor's cattle crossed the boundary and came onto the Creditors' land, damaging the Creditors'

crop. On March 11, 1989, the Debtor filed a Chapter 12 case in bankruptcy, and the Creditors filed Claim # 7 for the actual damages incurred in 1989 in the amount of $1,690.00 and punitive damages of $15,000.00, and Claim # 8 for the actual damages incurred in 1991 in the amount of $4,061.00. The Debtor objected to the claims on the following basis:

1. The cattle did not belong to the Debtor.
2. The claimed damage is speculative.
3. The creditors are responsible for the damage, if any, because the Creditors failed to maintain the portion of the fence erected by the Creditors.
4. The Creditors are not entitled to punitive damages as the Debtor's actions were not "egregious, willful conduct".

A hearing was held and at the close of the evidence this Court found the damage was done by the Debtor's cattle. Cattle tracks were found leading south from the direction of the Debtor's land to the Creditors' land. On several occasions when the cattle were chased from the Creditors' land they went north toward the Debtor's land, and on two occasions the cattle were identified as being those of the Debtor. The Debtor presented no evidence to support the position the cattle doing the damage did not belong to the Debtor.

This Court also found that the Creditors' calculation of actual damages was not speculative. The Creditors retained the services of a University of Illinois Agricultural Service representative who inspected the field and computed the actual damages by comparing the expected yields, based on typical yields, to the actual yields considering the damages, arriving at a yield variance.

In order to rule on the third objection, this Court must trace the development of the state law of Illinois governing liability for damages caused by cattle running loose. At the common law an owner of land was not required to fence the land to protect it from loose running cattle and the owner of cattle had to keep his cattle on his own land and was liable for damages should they stray onto the land of another. Under the common law the owner of cattle was bound at his peril to keep them off the lands of others or be responsible for damages. The landowner was not required to fence his land and the owner of cattle was required to keep his cattle on his own land. *McKee v. Trisler,* 311 Ill. 536, 542, 143 N.E. 69 (1924). In Illinois, the courts did not follow the common law as to cattle running at large, as the custom had been to permit cattle to run at large. So the owner of land had to protect his land against cattle running at large. *McKee v. Trisler, supra,* at 542–543, 143 N.E. 69. However, as to adjoining landowners, the Illinois courts did follow the common law. *McKee v. Trisler, supra,* at 543, 143 N.E. 69.

In 1874 the legislature of Illinois passed the Running at Large Act which made it unlawful for cattle to run at large. Ill.Rev. Stat., 1991, ch. 8, ¶ 1,[1] The effect of this Act was to restore the common law and to require the owner of cattle to keep them off the lands of others and to make him liable for damages. *McKee v. Trisler, supra,* at 542, 143 N.E. 69.

In 1874 the legislature of Illinois passed the Fence Act to regulate the duty of adjoining land owners respecting inside division fences. Ill.Rev.Stat., 1991, ch. 54, ¶ 0.01, *et seq.*[2] Section 2 of this Act describes the type of fence sufficient to prevent cattle from getting on adjoining land. Section 3 of the Act requires adjoining land owners to make and maintain a just portion of an inside division fence. However, both adjoining land owners have to desire to enclose their lands for them to be required to erect and maintain a just portion of the division fence. If either party desires to let his adjoining land lie open without a fence, he can do so and avoid liability to contribute to the erection of the division fence. *Boyd v. Lammert,* 18 Ill.App. 632 (1886). Section 20 of that Act provides the owner of cattle shall be liable for damages if the cattle break through a good and sufficient fence onto any other person's inclosure. That section goes on to provide that

---

1. Now found at 510 ILCS 55/1.

2. Now found at 765 ILCS 130/1 *et seq.*

§ 20 was not to be construed to require a fence in order to recover damages for cattle running at large.

In 1931 the Illinois legislature amended § 1 of the Running At Large Act to add the proviso that the owner of cattle was not liable for damages if the owner had used reasonable care to restrain them and did not know they were running at large. In 1986 the Illinois legislature further amended § 1 of the Running at Large Act requiring the owner of cattle to provide necessary restraints to prevent cattle from running at large, and making him liable for damages for cattle running at large, subject to the proviso added by the 1931 amendment.

After those amendments, the Illinois Appellate Court in *Hart v. Meredith*, 196 Ill. App.3d 367, 143 Ill.Dec. 75, 553 N.E.2d 782 (1990), had occasion to construe both Acts, and finding them *in pari materia* held that an owner of cattle is liable under the Running at Large Act if he negligently allows his cattle to run at large, regardless of whether there is a fence around the property of the damaged party, and is liable under the Fence Law if the cattle enter a landowner's property enclosed with a sufficient fence.

In summary, the owner of cattle faces potential liability for his cattle running at large under the Fence Act, or the common law if that Act is inapplicable, and the Running at Large Act.

■ In the present case, the Fence Act has no application. Although the Debtor requested a fence and the Creditors put up their portion, the Debtor never put up his portion. Without a division fence being erected, the Fence Act would not be activated. 2 I.L.P. Animals § 13, in discussing the interaction of the Fence Act and the common law, states:

> After the erection of a partition fence as prescribed by statute, the rights and obligations of the adjoining owners with respect to trespasses by their animals are determined under the statute, rather than by the common law.

A later paragraph goes on to provide:

> After the erection of a partition fence, the common-law rule, which requires the owner of animals to keep them on his close at his peril, is no longer in force, and the duties, obligations, and rights of adjoining owners must be determined under the statute. The owner of the adjoining land cannot recover for damages caused by a neighbor's animal which has come through that part of the fence assigned to him and which he has failed to maintain in the condition required by the statute.

As the Fence Act has no application, the Debtor's defense fails. However, under the common law it is liable to the Creditors, as an adjoining landowner, as the Debtor was obligated to keep its cattle out of the Creditors' land or be responsible for damages.

■ It also is liable to the Creditors under § 1 of the Running at Large Act, which provides in part as follows:

> All owners of livestock shall provide the necessary restraints to prevent such livestock from so running at large and shall be liable in civil action for all damages occasioned by such animals running at large; Provided, that no owner or keeper of such animals shall be liable for damages in any civil suit for injury to the person or property of another caused by the running at large thereof, without the knowledge of such owner or keeper, when such owner or keeper can establish that he used reasonable care in restraining such animals from so running at large.

510 ILCS 55/1. It is clear the Debtor failed to provide reasonable restraints on its cattle. Furthermore, the Debtor knew its cattle were running at large. In 1988 its cattle were running at large. The Debtor admitted they were its cattle, and pled guilty to a criminal charge. Yet it did nothing to prevent a recurrence, which did occur on several instances over the next several years.

■ The last issue before the Court is whether the Debtor should pay punitive damages. This Court finds that punitive damages are not appropriate. In order for punitive damages to be awarded, the Debtor's action must be egregious, or conspicuously bad or flagrant. While there were several incursions upon the Creditors' land which caused damages, the record before this Court

does not substantiate that the Debtor's action should be classified as egregious.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

### ORDER

For the reasons set forth in the Opinion entered this day; IT IS HEREBY ORDERED:

1. Claim No. 7 filed by George and Helen Robenstein is hereby ALLOWED in the amount of $1,675.00;

2. Claim No. 8 filed by George and Helen Robenstein is hereby ALLOWED in the amount of $4,011.00;

3. Objections filed by the Debtor to the claims of the Robensteins are SUSTAINED only as to the amount of punitive damages claimed.